752 F.2d 1085
 1985 A.M.C. 2477, 1 Fed.R.Serv.3d 160
 Leonard GAUTHIER, Plaintiff-Appellant, Cross-Appellee,
v.
CROSBY MARINE SERVICE, INC., American Marine Services, Inc.
and Exxon Corporation,
Defendants-Third-Party-Plaintiffs,
Appellees Cross-Appellants,
v.
DIXIE OIL TOOLS, INC., Defendants-Third-Party-Defendant,
Cross-Appellee,
and
L. Griffin, Inc., Third-Party Defendant-Appellee, Cross-Appellant.
 No. 83-3374.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 15, 1985.
 
 Montgomery, Barnett, Brown & Read, Paul M. Lavelle, A. Gordon Grant, Jr., New Orleans, La., for Leonard Gauthier.
 E. Burt Harris, Elliott G. Courtright, New Orleans, La., for Exxon.
 Rene A. Pastorek, Thomas L. Gaudry, Jr., Daniel A. Ranson, Gretna, La., for Dixie Oil Tools, Inc.
 Johnson & McAlpine, John B. Peuler, Michael L. McAlpine, New Orleans, La., for Crosby Marine Service & American Home.
 Waitz, Downer & Best, Joseph L. Waitz, Houma, La., for Mark Drilling, Inc.
 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Grady S. Hurley, New Orleans, La., for L. Griffin.
 Brame, Bergstedt & Brame, John E. Bergstedt, Lake Charles, La., for American Marine Service, Inc.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before GEE, REAVLEY and DAVIS, Circuit Judges.
 REAVLEY, Circuit Judge:
 
 
 1
 Leonard Gauthier brought suit to recover for personal injuries under the Jones Act, 46 U.S.C. Sec. 688 (1982), general maritime law, and Louisiana state law. Gauthier appeals from: first, judgments entered in accordance with a jury's findings that Crosby Marine, Inc., Gauthier's employer, was not negligent and that the vessel was seaworthy; second, an adverse directed verdict on the state law claim; and third, the district court's ruling excluding a deposition Gauthier sought to introduce at trial.
 
 
 2
 From Gauthier's maintenance and cure award heard separately by the court, Crosby Marine and L. Griffin, Inc. (Gauthier's subsequent employer) cross-appeal the district court's refusal to set off Gauthier's medical insurance benefits and denial of an indemnity claim against Dixie Oil Tools, Inc., a codefendant. We affirm. See Gauthier v. Crosby Marine Service, Inc., 536 F.Supp. 269 (E.D.La.1982).
 
 I. Facts
 
 3
 Gauthier was injured while attempting to load "fishing tools," equipment used in offshore oil drilling, onto the M/V Rickey III. Gauthier was the captain of the M/V Rickey III, a small lugger-type tug that serviced an Exxon Corp. offshore oil drilling rig. The M/V Rickey III was leased to Exxon by its owner and Gauthier's employer, Crosby Marine.
 
 
 4
 Gauthier was dispatched to an Exxon dock to pick up the fishing tools that were to be delivered by Dixie. The dock was shell-covered earth buttressed by a wooden bulkhead. The dock was equipped with a crane to load cargo and with lumber upon which cargo could be placed. When Dixie employees delivered the fishing tools, they placed the equipment on the shell-covered earth rather than on the lumber. By the time Gauthier began to load the fishing tools, one of the heavy pieces of equipment had sunk a few inches into the shell-covered earth. While attempting to lift the piece of equipment in order to secure the crane's sling underneath, Gauthier suffered a groin injury. Gauthier then successfully used a nearby piece of lumber as a pry bar to lift the fishing tool and secure the cable sling.
 
 II. Direct Appeal
 1. Jury Errors
 
 5
 Gauthier first contends on appeal that "the jury erred" in finding that Crosby Marine was not negligent and that the M/V Rickey III was seaworthy. Gauthier does not argue that the jury instructions were improper or that there was insufficient evidence to support the jury's verdict. Gauthier's complaint is only that the jury failed to accept his interpretation of the facts.
 
 
 6
 Gauthier supported his negligence and unseaworthiness claims with evidence that Gauthier and a deck hand had worked excessive hours with inadequate periods of rest, that Lindberg Crosby, the owner and president of Crosby Marine, failed to supervise Gauthier's working conditions, that the size of the M/V Rickey III's crew, two including Gauthier, was inadequate, and that the vessel was inadequately equipped to haul heavy equipment. There was also evidence, on the other hand, to support the verdict. Evidence at trial showed that Gauthier had volunteered to work extra shifts in order to earn extra money, that Gauthier was not tired at the time of the injury, and that the dock was equipped with an electric crane with which two men could load heavy equipment.
 
 
 7
 Even if Gauthier were claiming a court rather than jury error, there is no basis for complaint. The jury's verdict was supported by evidence. We therefore cannot overturn the verdict. Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946) ("appellate court's function is exhausted when [the] evidentiary basis [for the verdict] becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable").
 
 2. Exxon's Directed Verdict
 
 8
 Gauthier sued Exxon for negligence and strict liability for maintaining a defective dock under La.Civ.Code Ann. art. 2317 (West 1979).[1] Gauthier presented evidence at trial that Exxon's dock consisted of nothing more than a wooden bulkhead and shell-covered earth and that Exxon knew that the dock was to be used to store heavy equipment. Gauthier argued that the dock was defective in that heavy equipment could not be safely stored or handled. Gauthier appeals that this was sufficient evidence to submit the article 2317 claims to the jury.
 
 
 9
 With regard to the negligence claim under article 2317, we need not reach the issue whether the district court properly directed the verdict. On the date of the accident, July 3, 1978, Louisiana law provided that a plaintiff's contributory negligence was a complete defense to an article 2317 claim based on negligence. Weber v. Phoenix Assurance Co., 273 So.2d 30, 33 (La.1973).[2] Therefore, because the jury found that Gauthier was contributorily negligent, Gauthier could not have recovered on the negligence claim even if the claim had been submitted to the jury. CNG Producing Co. v. Columbia Gulf Transmission Corp., 709 F.2d 959, 962 (5th Cir.1983).
 
 
 10
 Generally, contributory negligence is also a complete defense to article 2317 strict liability claims. Hyde v. Chevron U.S.A., Inc., 697 F.2d 614, 620 (5th Cir.1983). In Dorry v. LaFleur, 399 So.2d 559, 560-61 (La.1981), however, the Louisiana Supreme court held that where the plaintiff had paid admission to the skating rink where he was injured, his contributory negligence was not a complete defense to a strict liability claim. In so holding, the court held that each case must be considered individually and distinguished prior cases holding contributory negligence was a complete defense in strict liability claims on grounds that the prior cases involved circumstances or conduct that was apparently innocuous and produced no income for the defendant. Id. at 561 (citing Loescher v. Parr, 324 So.2d 441 (La.1975) (magnolia tree); Turner v. Bucher, 308 So.2d 270 (La.1975) (child riding bicycle); Holland v. Buckley, 305 So.2d 113 (La.1974) (pet dog)). In CNG Producing Co. v. Columbia Gulf Transmission Corp., 709 F.2d at 962-63, this circuit, in keeping with Louisiana's case-by-case approach, held that the plaintiff's contributory negligence barred a strict liability claim where the plaintiff was an established business that actively contributed to the injury as opposed to the ordinary consumer in Dorry who failed to see a fresh pool of water on the ice.
 
 
 11
 Here, as with the business in CNG, Gauthier was an experienced seaman and captain. Gauthier was aware that the fishing tools were heavy and that they could be safely lifted with the pry bar and loading crane available at the dock. Contributory negligence applies here and bars recovery under article 2317.
 
 
 12
 Furthermore, even if Gauthier's contributory negligence were not a complete defense to the strict liability claim, the district court nevertheless properly entered the directed verdict. The directed verdict in favor of Exxon is proper if "consider[ing] all of the evidence ... in the light and with all reasonable inferences most favorable to [Gauthier] ... the Court believes that reasonable men could not arrive at a contrary verdict.... A mere scintilla of evidence is insufficient to present a question for the jury." Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir.1969).
 
 
 13
 In order to prevail on a strict liability claim under article 2317, Gauthier had to prove that "the vice (i.e., unreasonable risk of injury to another) in the person or thing whose act causes the damage, and that the damage resulted from this vice." Loescher v. Parr, 324 So.2d 441, 446-47 (La.1975).
 
 
 14
 Here, Gauthier presented evidence that the heavy fishing tool had sunk a few inches into Exxon's shell-covered earth bulkhead and that Gauthier was injured while attempting to lift the fishing tools in order to secure a crane cable sling underneath the equipment. During his cross-examination, Gauthier testified that heavy equipment, such as the fishing tools, was normally placed on boards provided by Exxon to facilitate the use of the crane in loading cargo and that the cable sling could have been safely secured underneath the fishing tools by digging a hole or, as Gauthier eventually did, using a board supplied by Exxon as a pry bar. Based on this evidence, the district court held, and we agree, that no reasonable jury could find that the dock was defective.
 
 3. Deposition
 
 15
 At trial, Gauthier sought to introduce into evidence the deposition of Lindberg Crosby in order to emphasize Crosby's testimony at trial indicating that Crosby Marine was negligent. Gauthier did not attempt to use the deposition to impeach Crosby or show that his testimony at trial contradicted his former testimony. Gauthier claimed that Fed.R.Civ.P. 32(a)(2) permitted such use of the deposition. That rule states, "The deposition of a party ... may be used by an adverse party for any purpose." Id. (emphasis added). The district court, notwithstanding Fed.R.Civ.P. 32(a)(2), may reject repetitious testimony. Fey v. Walston & Co., 493 F.2d 1036, 1046 (7th Cir.1974). The district court could properly exclude the deposition from evidence.
 
 III. Cross-Appeals
 1. Set-Off of Medical Insurance Payments
 
 16
 Crosby Marine and L. Griffin cross-appeal the district court's refusal to set off, from the maintenance and cure award, the payments Gauthier received from the medical insurance policy that he alone had purchased. Crosby Marine and L. Griffin cite Field v. Waterman S.S. Corp., 104 F.2d 849, 851 (5th Cir.1939), for the proposition that a seaman may recover maintenance and cure only for those expenses actually incurred. Because the medical insurance benefits were used to pay certain medical expenses, Crosby Marine and L. Griffin argue that those expenses were not incurred by Gauthier and, therefore, are not recoverable as maintenance and cure.
 
 
 17
 Gauthier, on the other hand, argues that the collateral source rule applies and bars Crosby Marine and L. Griffin from setting off compensation Gauthier received from an independent source. See Haughton v. Blackships, Inc., 462 F.2d 788, 790 (5th Cir.1972).
 
 
 18
 Maintenance and cure is an ancient form of liability unique to admiralty. It is based neither in tort, Adams v. Texaco, Inc., 640 F.2d 618, 620 (5th Cir.1981), nor strictly in contract, Cortes v. Baltimore Insular Line, 287 U.S. 367, 372, 53 S.Ct. 173, 174, 77 L.Ed. 368 (1932). Rather, maintenance and cure is a "duty ... imposed by the law itself as one annexed to the employment.... Contractual it is in the sense that has its source in a relation which is contractual in origin, but, given the relation, no agreement is competent to abrogate the incident." Id. at 371, 53 S.Ct. at 174, 77 L.Ed. at 371.
 
 
 19
 Because of the unique nature of maintenance and cure, normal rules of damages, such as the collateral source rule in tort, are not strictly applied. Compare Stanley v. United States Fidelity and Guaranty Co., 425 So.2d 608 (Fla.Dist.Ct.App.1983) (availability of charitable services did not mitigate tort victim's damages) with Brown v. Aggie & Millie, Inc., 485 F.2d 1293, 1296 (5th Cir.1973) (seaman not entitled to maintenance and cure for time spent in public hospital). Nevertheless, a shipowner is not permitted to set off all moneys an injured seaman receives during the period he is entitled to maintenance and cure. For example, the Supreme Court held that a shipowner who disregarded the seaman's maintenance and cure claim was not entitled to set off amounts the seaman had earned as a taxi driver in order to survive while his claim was pending. Vaughan v. Atkinson, 369 U.S. 527, 533, 82 S.Ct. 997, 1001, 8 L.Ed.2d 88 (1962). The Court reasoned that if a shipowner were allowed to ignore a maintenance and cure claim and then set off any money earned by the injured seaman during the pendency of the claim, the whole purpose of maintenance and cure, to protect injured seamen, would be defeated. Id. In contrast, in Johnson v. United States, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468 (1948), the Court held that an injured seaman who lived with and was cared for by his parents without cost to himself was not entitled to maintenance and cure, because the seaman had not himself incurred any actual expense. Based on the same reasoning, this circuit has held that a seaman may not collect maintenance and cure for time spent in a public hospital. Brown v. Aggie & Millie, Inc., 485 F.2d 1293, 1296 (5th Cir.1973).
 
 
 20
 We believe that this case is closer to the situation in Vaughan than to those in Johnson and Brown. First, Gauthier had incurred expenses because he alone paid the medical insurance premiums. Similarly, the seaman in Vaughan incurred expenses in the sense that the seaman was forced to work in order to survive instead of receiving maintenance and cure. The seamen in Johnson and Brown, to the contrary, had not incurred any personal expenses but had lived off the charity of others or the public at large. Second, as in Vaughan, the policy of protecting injured or ill seamen would be hampered if a shipowner, in hopes of reducing his liability, delayed maintenance and cure payments in order to force seamen to look first to their private insurer. Yet, the seaman in Johnson was protected because the free care he received was presumably the result of his free choice. The seaman in Brown was similarly protected in that the public hospital was readily available to provide free medical care.
 
 
 21
 That Crosby Marine and L. Griffin are not entitled to set off moneys Gauthier received from his medical insurer is also supported by Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525 (9th Cir.1962). In Gypsum, the Ninth Circuit held that a shipowner was not entitled to set off from a maintenance and cure award the seaman's state disability compensation. Id. at 537.
 
 
 22
 For the above-stated reasons, we hold that where a seaman has alone purchased medical insurance, the shipowner is not entitled to a set-off from the maintenance and cure obligation moneys the seaman receives from his insurer.
 
 2. Indemnity
 
 23
 At trial, Dixie was the only defendant found to be negligent. Absolved from fault for Gauthier's injuries, Crosby Marine and L. Griffin seek indemnification for maintenance and cure payments from Dixie.
 
 
 24
 To determine whether Dixie must indemnify Crosby Marine and L. Griffin for the maintenance and cure award, we must first determine what law controls. In Jones v. Waterman S.S. Corp., 155 F.2d 992 (3d Cir.1946), the court held that where a seaman is injured on land as a result of the onshore negligence of a third party, the shipowner's right to indemnification for maintenance and cure payments is governed by the law of the state where the operative facts occurred. Id. at 997 & nn. 3-4. Similarly, this circuit has held that a shipowner's right to indemnity against a land-locked physician who negligently treats a patient injured at sea is governed by state law. E.g., Joiner v. Diamond M Drilling Co., 688 F.2d 256, 260-61 (5th Cir.1982). The Joiner court could find "absolutely no support for the proposition that an ordinary, private, onshore physician who treats an injured sailor has thereby submitted himself to the rules of maritime commerce." Id. at 260.
 
 
 25
 Jones and Joiner dictate that Louisiana law governs Crosby Marine's and L. Griffin's right to indemnification against Dixie. Like the seaman in Jones, Gauthier was injured on land as the result of Dixie's negligent conduct ashore. Furthermore, like the court in Joiner, we hold that by delivery of equipment to a dock for eventual loading onto a vessel, one does not submit oneself to maritime law.
 
 
 26
 Crosby Marine and L. Griffin cite, among other cases, Savoie v. LaFourche Boat Rentals, Inc., 627 F.2d 722 (5th Cir.1980), to support their position that federal maritime law governs a shipowner's right to indemnification against negligent third parties. Savoie and the other cases cited are inapplicable to the present action because, in each of those cases, the seaman was injured at sea and not on land, as Gauthier was. Torts occurring at sea have traditionally been within the jurisdiction of federal maritime law. See Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972).
 
 
 27
 A shipowner's right to indemnification from a negligent third party under the facts of this case is unsettled in Louisiana law. The operative facts in this case are: the injury occurred on land; the original award is for maintenance and cure; and the injured seaman was contributorily negligent.
 
 
 28
 In Rogers v. Stuyvesant Insurance Co., 198 So.2d 685 (La.Ct.App.), writ issued, 251 La. 42, 202 So.2d 655 (1967) (no reported disposition of case by Louisiana Supreme Court), the same operative facts arose. Relying on a number of federal decisions, the court held that the shipowner was entitled to indemnification. The Rogers court, however, improperly applied the federal case law upon which it relied for its holding. The court cited Jones v. Waterman S.S. Corp., 155 F.2d 992 (3d Cir.1946), for the proposition that federal maritime law controlled a shipowner's right to indemnification for maintenance and cure payments to a seaman injured ashore and that federal maritime law permitted such indemnification. Rogers, 198 So.2d at 691. As noted earlier, however, Jones expressly holds that Pennsylvania law governed and it permitted indemnification. Jones, 155 F.2d at 997 & nn. 3-4.[3]
 
 
 29
 By applying Louisiana law rather than Pennsylvania law, to which the Rogers court looked, we reach a different result. Louisiana imputes an employee's contributory negligence to the employer and bars the employer from maintaining an action for his own damages. Aetna Casualty and Surety Co. v. Reed, 355 So.2d 952, 953 (La.Ct.App.1977). In Reed, several claims arose out of an automobile collision between a vehicle driven by Reed and a vehicle driven by Jones. The court found that the negligence of both Reed and Jones combined to cause the collision. Jones' employer, ACF Industries, owned the vehicle being driven by Jones and sued Reed's estate to recover for damages to the vehicle. The court held that Jones' negligence precluded ACF's recovery for damage to its vehicle.
 
 
 30
 We hold under Reed, which articulates the governing Louisiana law, that a shipowner is prohibited from seeking indemnification from a third party tortfeasor for maintenance and cure payments to a contributorily negligent seaman injured ashore. Applying this rule to the present action, we hold that Crosby Marine and L. Griffin may not seek indemnification from Dixie because the jury found Gauthier to be contributorily negligent.
 
 
 31
 The district court judgment is AFFIRMED.
 
 
 
 [1]
 La.Civ.Code Ann. art. 2317 (West 1979), provides, in relevant part, that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."
 
 
 [2]
 Effective August 1, 1980, over two years after Gauthier's injury, the Louisiana legislature amended the civil code to provide that a plaintiff's contributory negligence mitigates only damages and is not a complete defense. La.Civ.Code Ann. art. 2323 (West Supp.1984)
 
 
 [3]
 Other decisions relied upon by the Rogers, 198 So.2d at 690-91, court involved injuries occurring on navigable waters, see e.g., Seely v. City of New York, 24 F.2d 412 (2d Cir.1928), where federal maritime law properly governed. The Rogers court failed to note this critical difference