**Hizam AL–ZAWKARI,**
**Plaintiff–Appellant,**

v.

**AMERICAN STEAMSHIP COMPANY,**
**Defendant–Appellee.**

No. 87–1809.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 6, 1988.

Decided April 5, 1989.

Rehearing and Rehearing En Banc
Denied June 9, 1989.

**586**

D. Michael O'Bryan (argued), O'Bryan Law Center, P.C., Birmingham, Mich., for plaintiff-appellant.

John A. Hamilton, Foster, Meadows & Ballard, P.C., Detroit, Mich., Fenton F. Harrison (argued), Buffalo, N.Y., for defendant-appellee.

Before KENNEDY, KRUPANSKY and BOGGS, Circuit Judges.

KRUPANSKY, Circuit Judge.

Plaintiff-appellant Hizam Al–Zawkari (plaintiff) has initiated the instant appeal from a judgment following a bench trial in favor of defendant, American Steamship Company. Plaintiff was employed by the defendant as a seaman between 1970–1983. In November, 1983, plaintiff became ill aboard defendant's ship, and was hospitalized for several months, as a result of which he incurred substantial medical expenses. All of these expenses, however, were reimbursed by his insurance company, Blue Cross, or by the Seafarers' Welfare Plan (SWP), a plan fully funded by shipowners to cover the medical expenses of seamen. As a result, plaintiff incurred no out-of-pocket liabilities.

▮ Plaintiff initiated the instant action to recover maintenance and cure from defendant.[1] Plaintiff argued that the amount of "maintenance" paid him by defendant was insufficient and in conflict with the intent and purpose of the Supreme Court's decisions imposing the maintenance requirement upon shipowners. Plaintiff also asserted that he was entitled to "cure" reimbursement despite the payment of his medical expenses by his insurer and by the SWP. In addition plaintiff attempted to recover punitive damages and attorney fees because of defendant's refusal to endorse the payment of his demanded benefits.

The case was tried to the court on the stipulations of the parties and testimony developed during the course of the trial. On July 20, 1987, the court issued its opinion and judgment concluding that plaintiff was not entitled to payments in addition to those already received for maintenance and cure nor to punitive damages and attorney's fees.

The instant case arose as a result of plaintiff's illness incurred while working on defendant's ship. He was hospitalized in St. Luke's Hospital in Saginaw, Michigan from November 9–17, 1983; the University

---

1. Maintenance and cure are obligations imposed upon a shipowner by federal common law. The maintenance obligation requires the shipowner to provide a seaman with food and lodging if he becomes injured or falls ill while in service of the ship. "Cure" is the shipowner's obligation to provide necessary medical care and attention.

of Michigan Hospital between November 17, 1983 and February 9, 1984; and in a Brooklyn, N.Y. hospital from October 8–29, 1984, January 29–31, 1985, and February 14–27, 1985. All of plaintiff's medical expenses have been paid by the SWP or by Blue Cross and the health care providers have accepted such payments as full satisfaction of their respective claims.

Plaintiff was a member of the Seafarers' International Union (the Union) and, pursuant to the union's collective bargaining agreement with defendant, seamen including plaintiff were entitled to maintenance of $8 per day. Defendant commenced maintenance payments when it was notified of plaintiff's disability and continued those payments whenever it received documentation of plaintiff's continuing disability.

The maintenance payment of $8 per day has existed for at least 20 years and has been reaffirmed each time the collective bargaining agreement between the union and the defendant has been renegotiated. Appellant charged that since the Supreme Court defined the maintenance rate as the amount of money necessary to provide a seaman with food and lodging equivalent to that which he would have received on board ship, *see Calmar Steamship Corp. v. Taylor*, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938), and which, like the minimum wage, for example, could not be waived by contract, a payment of $25 per day was more realistic than the negotiated $8 per day stipulated by the collective bargaining agreement.

Pursuant to the collective bargaining agreement, defendant was also obligated to provide payments for necessary medical care and attention ("cure"). Plaintiff had attained maximum medical benefit status under the SWP in March 1985. Plaintiff argued that defendant was required to provide "cure" even if he personally funded his own supplemental insurance coverage apart from the coverage afforded by SWP.[2] Twenty thousand dollars of plaintiff's

medical bills were paid by the SWP and $185,000 was paid by Blue Cross. Defendant urged that these payments completely satisfied its "cure" obligation since shipowners have funded SWP for the very purpose of discharging shipowners' "cure" obligations. Historically, shipowners had discharged their "cure" obligation by providing disabled seamen with medical services through the U.S. Public Health Service (USPHS), which had also been funded by the shipowners. The USPHS was phased out of existence when it was replaced by the SWP, which shipowners currently utilize to discharge their obligations to provide cure for disabled seamen.

To qualify for SWP benefits, a seaman must:

1. have had 125 days of covered employment in the calendar year immediately preceding the year in which his/her claim accrues, and

2. have had one (1) day of covered employment in the six (6) month period immediately preceding the date on which the claim accrues, and

3. have applied for care within 180 days of his/her last day of employment unless he/she can prove that he/she has been under continuous medical care since his/her last job upon a covered vessel. (Amend. #25, 4/1/83); and

4. any employee who had worked for at least one (1) day and who was aboard ship working for an employer who was obligated to make contributions to the SWP on the employee's behalf was eligible for emergency care regardless of length of service.

The district court ruled that plaintiff was entitled to maintenance of $8 per day and that his care was "emergency care" covered by the SWP, thereby discharging the shipowner's responsibility to plaintiff for maintenance and cure. From these rulings, plaintiff initiated the instant timely appeal.

---

2. Plaintiff suggests that the so-called "collateral source" rule would permit him to recover "cure" from the defendant even if plaintiff's medical expenses were paid for by plaintiff's own private insurance carrier. Because plaintiff has expended his own funds to purchase private insurance and because defendant did not contribute to the premium, arguably defendant should not benefit from plaintiff's expenditures and should remain liable to pay for plaintiff's medical expenses.

Initially, this court's attention is directed to an exploration of the requirements imposed by admiralty law upon the issues joined in the instant case. The duty to provide maintenance is extrinsic to the collective bargaining agreement. *See Cortes v. Baltimore Insular Line,* 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932). Indeed, some cases state that the right to maintenance cannot be abrogated by contract. *Id.; DeZon v. American President Lines,* 318 U.S. 660, 63 S.Ct. 814, 87 L.Ed. 1065 (1943). In *Aguilar v. Standard Oil Co.,* 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943), the Supreme Court explained that the right to maintenance is an "implied provision in contracts of marine employment."

■ While the duty to provide maintenance cannot be *entirely* abrogated, as an implied contractual provision, the right to maintenance can be modified and defined by contract. *See Gardiner v. Sea–Land Service, Inc.,* 786 F.2d 943, 949 (9th Cir.), *cert. denied,* 479 U.S. 924, 107 S.Ct. 331, 93 L.Ed.2d 303 (1986). The *Gardiner* court reasoned that "when a benefits package includes an express reference to a precise rate of maintenance," *id.* at 949, it must be presumed that this rate was arrived at by negotiation.[3] Accordingly, the maintenance per diem rate, like any other benefit, which is the ultimate result from give and take collective bargaining between the parties, should be binding on them. Thus, the *Gardiner* court properly enforced a collective bargaining per diem maintenance rate of $8. *Id. See also Castro v. M.V. Ambassador,* 657 F.Supp. 886 (E.D.La.1987) (following *Gardiner* ); *Dixon v. Maritime Overseas Corp.,* 490 F.Supp. 1191 (S.D.N. Y.), *aff'd,* 646 F.2d 560 (2d Cir.1980), *cert. denied,* 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981) (despite inflation, the union contract establishes a rate of maintenance of $8 per day and that rate is binding on the seamen). Courts generally have decided that it is more appropriate for the courts to enforce privately negotiated contractual rates of maintenance, rather than engaging in overt legislation of particular dollar figures.[4]

■ Plaintiff next charged that he was entitled to reimbursement of his total medical expenses from defendant despite the fact that the SWP would have covered the totality of plaintiff's medical expenses. Appellant argued that under circumstances where a seaman has purchased private medical insurance, the seaman alone is entitled to the benefits of his personally funded insurance policy and the shipowner is not entitled to set off the contributions of a collateral source to the shipowner's obligations of providing for the seaman's cure.

■ The counterpoint to the seaman's argument rests in existing legal precedent which explains that the purpose of cure is purely compensatory and unrelated to the negligence of the employer and restricts a seaman's recovery to only out-of-pocket "cure" expenses. Because the liability of the shipowner to reimburse the seaman for the totality of his out-of-pocket "cure" expenses, either directly or through shipowner-funded medical plans such as the SWP, is absolute, a seaman who personally funds a duplicate personal medical plan to reimburse himself for his out-of-pocket "cure" expenses is not entitled to the benefits of that duplicate coverage to the detriment of the shipowner, which has its funded plan in place, by denying it the right to

---

**3.** In the instant case, as in *Gardiner,* the rate of maintenance was the result of the negotiations conducted between the parties. It was stipulated that:

> Negotiations were held between the SIU (the Union) and GLAMO (management) or their representatives in 1960, 1963, 1966, 1969, 1972, 1975, 1978 and 1981. The daily rate payable for maintenance as well as all other matters properly the subject of collective bargaining were considered during negotiations in 1975, 1978 and 1981.

**4.** The decision in *Merchant v. American Steamship Co.,* 860 F.2d 204 (6th Cir.1988) is not to the contrary. That decision refused to enforce a collective bargaining agreement when the provisions of that agreement conflicted with the maritime law doctrine which prohibits shipowners from discharging employees who had asserted Jones Act rights. However, that wrongful discharge law is a precise federal law obligation, arising from statutory law, in contrast to the inherently vague common law maintenance obligation, the precise extent of which must be defined by the courts or by contract.

set off the payments advanced by the seaman's duplicate benefits policy. The shipowner should not be penalized by a double liability or payment under circumstances where it has satisfied its absolute liability by providing for the full payment of the seaman's total out-of-pocket "cure" expenses through a shipowner's exclusively funded medical plan, i.e., the SWP, which the seaman, for whatever reason, refuses or fails to impress with his claim.[5]

This rule is consistent with pertinent case authority. In *Gosnell v. Sea–Land Service, Inc.*, 782 F.2d 464, 468 (4th Cir. 1986), the court decided that plaintiff seaman was entitled to no recovery for cure because his medical expenses had already been paid by the union's medical and hospitalization plan. In *Shaw v. Ohio River Co.*, 526 F.2d 193, 200 (3d Cir.1975), the court addressed the precise question at issue herein and decided that the vessel owner should not be found liable for cure where Blue Cross/Blue Shield paid for the seamen's medical expenses. Similarly, in *Mahramas v. American Export Isbrandtsen Lines, Inc.*, 475 F.2d 165, 172 (2d Cir. 1973), the court decided that the seaman had no right to cure because she received most of her treatment at a public service hospital and "there is no evidence that she had any out-of-pocket medical expenses." *Id.*

▮ Accordingly, the employer's contribution into the Seamen's Welfare Plan (SWP) completely satisfied the shipowner's potential cure liability. In the instant case, the shipowner paid $45.17 in man-day contributions into the SWP. The court found that plaintiff's total medical expenses would have been paid by the SWP if plaintiff's Blue Cross had not already paid those expenses.[6] The district court found that

appellant had waived his right to cure because he voluntarily rejected the SWP's benefits. *See Kossick v. United Fruit Co.*, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961); *Sanford Bros. Boats, Inc. v. Virdine*, 412 F.2d 958 (5th Cir.1969).

Plaintiff has argued that he acquired his Blue Cross health insurance because he was of the opinion that he had not qualified for SWP coverage because he had failed to satisfy the minimum requisite service requirements for the year 1982; however, the district court concluded that he had qualified for the SWP benefits under its "emergency care" provisions.[7]

Although plaintiff did not have the requisite 125 days of service in 1982 to qualify for SWP non-emergency medical benefits during 1983, plaintiff's 1983 expenses constituted "emergency care" covered by the SWP regardless of length of service. Plaintiff became ill November 9, 1983. It was stipulated that plaintiff's condition was not stabilized until at least January 1, 1984 and that plaintiff remained in imminent danger of death until at least that time. Indeed, the stipulated facts show that plaintiff was fed intravenously until February, 1984. When he was released from the hospital on February 8, 1984, his discharge status was simply shown as "ALIVE." Accordingly, his condition through February can be described only as an "emergency situation" covered by the SWP. It is uncontroverted that plaintiff would have been insured for even non-emergency care by the SWP from January 1, 1984 onward because plaintiff's service (more than 125 days) in 1983 qualified him for full SWP coverage.

In short, plaintiff would have been entitled to "emergency care" coverage before January 1, 1984 and after that time, he

---

5. This court is not confronted with nor does it decide the rights of either a seaman or a shipowner under circumstances where a shipowner or its exclusively funded medical plan is incapable, for whatever reason, of satisfying the shipowner's absolute liability to provide for the full payment of seaman's out-of-pocket cure expenses.

6. The SWP contains a "coordination of benefits" clause stating that the SWP would not pay for any expenses covered by other sources.

7. Although this court may review the written SWP contract *de novo*, the text of the contract is ambiguous and the district court properly resorted to extrinsic evidence. Findings of fact with regard to the extrinsic evidence are accorded the benefit of the clearly erroneous standard of review.

would have been insured because of his 1983 service. Plaintiff never actually availed himself of the SWP benefits to which he was entitled because he had acquired Blue Cross insurance. However, his voluntary waiver of SWP benefits in favor of Blue Cross coverage precluded him from claiming a right to cure against the defendants. *Cf. Dowdle v. Offshore Express, Inc.*, 809 F.2d 259, 265 (5th Cir.1987) (where an employer has tendered free medical care but the seaman refuses and consults a private physician, the seaman usually forfeits right to cure) *(citing Kossick v. United Fruit Co.*, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961)).

Appellant has also urged that SWP was inadequate because of its delayed payment policy. However, Richard Keaton (Keaton), defendant's claims manager, testified that defendant shipowner paid all outstanding medical bills immediately upon presentation and would thereafter seek reimbursement from SWP only after the seamen had received necessary and required medical attention. Keaton testified further that in the event SWP did not afford an employee coverage, the defendant would nonetheless assume payment of such incurred expenses.

Accordingly, defendant is not liable for the plaintiff's medical expenses because the defendant's contributions to the SWP

completely discharged the shipowner's liability. *Cf. Folkestad v. Burlington Northern Inc.*, 813 F.2d 1377 (9th Cir.1987) (benefit which injured railroad employee received through railroad's health and welfare plan was not collateral source and could offset railroad's FELA liability). This court has also considered plaintiff's remaining assignments of error and has found them to be without merit. Accordingly, the lower court's decision is AFFIRMED.[8]

---

**8.** Plaintiff's claim for punitive damages and attorney fees, predicated upon the shipowner's willful refusal to pay his unearned wages which accrued during his illness and the expiration of his employment contract, is misconceived. Although plaintiff was remiss in including this claim in his complaint and in not formally notifying the shipowner of this demand until the final pretrial, which claim was acknowledged shortly thereafter and reduced to a sum certain and incorporated into the judgment that was subsequently satisfied immediately after the trial, the seaman's insistence upon characterizing the shipowner's conduct as willful, was without support. The trial court properly rejected the seaman's charges of willfulness and concluded that the delayed payment of his unearned wages was self-induced and resulted from the untimeliness of his claim. The conclusion of the trial court was not an abuse of discretion. *See Breese v. AWI, Inc.*, 823 F.2d 100, 103 (5th Cir.1987) (admiralty attorney fee/punitive damages claim is subject to abuse of discretion standard); *Holmes v. J. Ray*

*McDermott & Co.*, 734 F.2d 1110, 1118 (5th Cir.1984) (shipowner's conduct must be "willful, callous and persistent," "arbitrary and capricious" or "callous and recalcitrant" to support an award of attorneys fees and punitive damages).

Plaintiff's claim for prejudgment interest on the award of damages, resulting from an agreed-upon amount of accrued unearned wages and other incidental expenses, is without merit because the amount awarded was nominal in comparison with his total demand of at least $150,000. Consequently, the trial court did not abuse its discretion in denying plaintiff's claim for prejudgment interest. *See e.g. Reeled Tubing, Inc. v. M/V Chad G.*, 794 F.2d 1026, 1028 (5th Cir.1986) (when admiralty damage award is nominal in comparison with the claimed amount, prejudgment interest need not be awarded). In such explicit circumstances, the trial court had no duty to make a specific ruling on prejudgment interest. *Noritake Co., Inc. v. M/V Hellenic Champion*, 627 F.2d 724, 730 (5th Cir.1986).