MORAN TOWING &
TRANSPORTATION
CO., INC., Plaintiff,

v.

Whitney LOMBAS, Defendant.

No. 92 Civ. 1327 (CSH).

United States District Court,
S.D. New York.

Jan. 25, 1994.

Profeta & Eisenstein, New York City (Fred R. Profeta, Jr., of counsel), for plaintiff.

Alan H. Buchsbaum, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This case, before the court on cross-motions for summary judgment under Rule 56, Fed.R.Civ.P., requires consideration of a seaman's right to cure within the context of that social legislation popularly known as Medicare.

### Background

In April 1988 Whitney Lombas was employed by Moran Towing & Transportation Co., Inc. ("Moran") as a tugboat captain. While serving in that capacity, and carrying a wire cable on a dock in Staten Island, New York, Lombas allegedly fell and injured his neck.

That injury and Lombas' subsequent medical treatment gave rise to claims he asserted against Moran for maintenance and cure. Moran commenced this action against Moran for a declaratory judgment to define the boundaries of its liability to Lombas for maintenance and cure, and to recover amounts allegedly overpaid to him. The parties cross-moved for summary judgment, an appropriate remedy since no material facts are in dispute.

The briefs of counsel have resolved any dispute as to maintenance. The remaining issue relates to cure. Specifically, Lombas claims that he requires further surgery on his cervical spine, and that Moran is obligated to pay the fee of a surgeon privately consulted by Lombas. Moran contends that its obligation to furnish cure is satisfied by the availability to Lombas of Medicare funding, unless Lombas can prove that there are no competent surgeons within reasonable proximity to Lombas' residence who are competent to perform the surgery in question for the amount of the Medicare allowance. Lombas attempts no such proof. He contends that Moran is wrong in law, and must pay the fee of the privately retained surgeon (who declines to accept the Medicare allowance) in order to satisfy the shipowner's obligation of cure.

### Discussion

■ The ancient admiralty doctrine of maintenance and cure obligates a shipowner to provide a seaman with food and lodging if he becomes injured or falls ill while in the service of the ship ("maintenance"), and to provide necessary medical care and attention ("cure"). The doctrine may be traced at least as far back in history as the Laws of Oleron, a maritime code promulgated around 1200 A.D., whose authorship is claimed by both England and France. *See 1B Benedict on Admiralty* (7th ed. 1986) at § 42, p. 4–4 n. 1. Another historical theory ascribes that code to Gascon origin, introduced in England by Richard I after his return from the Holy Land. *See Peninsular & Oriental Steam Navigation Company v. Overseas Oil Carriers, Inc.*, 553 F.2d 830, 834 n. 2 (2d Cir.1977). Maintenance and cure has always formed a part of American maritime law, *see, e.g., The Osceola*, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903), as "an implied provision in contracts of marine employment." *Aguilar v. Standard Oil Company of New Jersey*, 318 U.S. 724, 730, 63 S.Ct. 930, 933, 87 L.Ed. 1107 (1943).

During that time in the nation's social history when the United States Public Health Service maintained a number of marine hospitals to treat seamen at little or no cost, the caselaw made it clear that the availability of such cost-free "cure" satisfied the shipowner's contractual obligation to provide cure. A typical statement appears in *The Bouker No. 2*, 241 F. 831, 835 (2d Cir.), *cert. denied*, 245 U.S. 647, 38 S.Ct. 9, 62 L.Ed. 529 (1917): "It is not permissible for a person entitled to care from his ship (and equally entitled to have that care bestowed in a Marine Hospital) to deliberately refuse the hospital privilege, and then assert a lien upon his vessel for the increased expense which his whim or taste has created." In *Kossick v. United Fruit Co.*, 365 U.S. 731, 737, 81 S.Ct. 886, 891, 6 L.Ed.2d 56 (1961), the Supreme Court cited *The Bouker No. 2* among other cases for the propositions "that a shipowner's duty to provide maintenance and cure may ordinarily be discharged by the issuing of a master's certificate carrying admittance to a

public hospital, and that a seaman who refuses such a certificate or the free treatment to which it entitles him without just cause, cannot further hold the shipowner to his duty to provide maintenance and cure." It followed that a seaman admitted to a public hospital who discharged himself without the knowledge or approval of the authorities forfeited "by his voluntary rejection of hospital care" any subsequent claim against his employer for cure. *Bailey v. City of New York*, 153 F.2d 427 (2d Cir.1946). The shipowner's obligation revived if the seaman could prove that proper and adequate cure was not available at the public hospital, *Kossick*, 365 U.S. at 737, 81 S.Ct. at 891, as in a case where the public hospital physician failed to diagnose and treat the seaman's injury, *Keiser v. American President Lines, Inc.*, 384 F.Supp. 554, 556 (S.D.N.Y.1974). But absent such special circumstances, "[a]dmiralty courts routinely have taken judicial notice of the free medical care and have denied awards against the shipowners for medical services available at government expense." *Jones v. Reagan*, 748 F.2d 1331, 1335 (9th Cir.1984) (citing *Calmar Steamship Corp. v. Taylor*, 303 U.S. 525, 531, 58 S.Ct. 651, 654, 82 L.Ed. 993 (1938)), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3505, 87 L.Ed.2d 636 (1985).

When Congress enacted the Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, 95 Stat. 357 (1981), it terminated the right of seamen to receive free medical care at Public Health Service hospitals. *See Jones v. Reagan*, 748 F.2d at 1334. *Jones v. Reagan* rejected claims by a class of seamen rendered not fit for duty by injury that the termination violated their constitutional and contractual rights. In dismissing a constitutional equal protection claim, the Ninth Circuit noted that "[m]edical care is still available to the plaintiffs, either through individual payments, private insurance policies *or government-financed social programs such as Medicare or Medicaid.*" *Id.* at 1337 (emphasis added). In dismissing a due process claim, the court noted that "Congress might have concluded that permanently disabled seamen, like active seamen, had adequate rights against shipowners, personal resources, private medical insurance *or access to other governmental programs that would*

*substitute for free treatment in the Public Health Service hospitals.*" *Id.* at 1339 (emphasis added).

■ While no prior case appears to have directly confronted the issue, I conclude that the availability to Lombas under the Medicare program of free surgical care satisfies Moran's obligation to furnish that element of cure. Medicare is the functional equivalent of the previously available free treatment at Public Health Service hospitals. No reasoned distinction between the two, in law or policy, is suggested. My conclusion assumes, of course, that Lombas qualifies for Medicare, and that there are available within a reasonable distance of his residence surgeons competent to perform the indicated procedure and who will accept the Medicare allowance in full payment of their fees. Lombas' eligibility for the program does not appear to be disputed. The present record contains no proof that competent, Medicare-compensable surgeons are not available to him. Lombas bears the burden of proof on that issue. *Kossick*, 365 U.S. at 737, 81 S.Ct. at 891. In fairness to Lombas, he has not attempted such proof because, under his view of the law which I now reject, he did not need to. This opinion does not preclude Lombas from attempting such proof if so advised.

*Al–Zawkari v. American Steamship Co.*, 871 F.2d 585 (6th Cir.1989), upon which Lombas relies, does not require a different conclusion. *Al–Zawkari* holds that a shipowner's contributions to the Seafarers' Welfare Plan, forming a part of a collective bargaining agreement, "completely satisfied the shipowner's potential cure liability," so that a seaman who personally funded a duplicate personal medical plan "is not entitled to the benefit of that duplicate coverage to the detriment of the shipowner, which has its funded plan in place, by denying it the right to set off the payments advanced by the seaman's duplicate benefits policy." *Id.* at 588–89. The case did not consider the effect of free medical service under Medicare upon the shipowner's obligation to cure.

■ Lombas, stressing the undisputed fact that he is not a union member and is not covered by a comparable collective bargain-

ing agreement, and the public nature of Medicare funding, argues that Moran "cannot claim it has satisfied any cure obligation inasmuch as no payment has been made by the shipowner to Medicare." Main brief at 4. But I do not think the particular source of public funding for such social programs is relevant to the analysis. A seminal case such as the Second Circuit's opinion in *The Bouker No. 2* did not turn on the fact that the shipowner had contributed directly to the cost of maintaining marine hospitals; nor could it have done so, since after June 30, 1906, such expenses were paid "out of the general fund of the United States Treasury." 2 *Norris, The Law of Seamen* (4th ed. 1985) at ¶ 26.54, p. 142. Cure is an implied contractual obligation of the shipowner to ensure that a seaman injured in the service of the ship does not bear out-of-pocket medical expense. If competent public medical services are available to the seaman without charge, he may not spurn them and assert a claim for cure against his employer. That long-established admiralty rule does not depend upon the niceties of funding.

Lombas also relies upon *Titchnell v. United States*, 681 F.2d 165 (3d Cir.1982), and comparable cases, which arise in a tort setting. In *Titchnell* the recipient of a swine flu inoculation brought a medical malpractice action against the government when he suffered a stroke shortly after his inoculation. The Third Circuit, construing Pennsylvania law, held that Medicare payments partially funded by premiums paid by the plaintiff fell within a "collateral source" and therefore were not deductible from his judgment for damages. Tort cases furnish no guidance in the area of maintenance and cure, where the shipowner's obligation sounds in contract. "Fault concepts are alien to the maintenance and cure remedy; neither the negligence of the shipowner nor the contributory negligence of the seaman are factors to be considered." 1B *Benedict, op. cit.*, at § 42, pp. 4–6.

I conclude that, on the remaining issue of cure, Moran is entitled to the relief demanded in the complaint.

Counsel are directed to settle a judgment consistent with this opinion on five (5) days'

notice within fifteen (15) days of the date hereof.

It is SO ORDERED.