**Archie TOULSON, Plaintiff,**

v.

**AMPRO FISHERIES, INC., Defendant.**

**Civ. No. 3:94CV433.**

United States District Court,
E.D. Virginia,
Richmond Division.

Jan. 10, 1995.

Carroll Arthur Rutter, Jr., Rutter & Montagna, Norfolk, VA, for plaintiff.

Richard John Barrett, Vandeventer, Black, Meredith & Martin, Norfolk, VA, for defendant.

### *MEMORANDUM*

MERHIGE, District Judge.

This matter is before the Court on Defendant's motion for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56. For the reasons which follow, the Court will grant the motion.

### I.

Plaintiff, a 67–year old American seaman, filed this action pursuant to the maritime laws of the United States, as amended by the Jones Act, 46 App.U.S.C. § 688 et seq. Plaintiff alleges that in May, 1992, while working aboard Defendant's vessel F/V ATLANTIC QUEEN, he sustained serious injuries when the Captain's boat upon which he was a crewman collided with the Mate's boat. According to Plaintiff, the collision knocked him into the engine box of the boat, injuring his shoulder and neck. Subsequent to the accident, Plaintiff underwent two separate surgeries, the first to repair his shoulder and the second to repair an injured disc.

Plaintiff's first cause of action sounds in negligence. He alleges that Defendant (1) failed to provide a safe work environment; (2) failed to comply with applicable Coast Guard and OSHA regulations; (3) failed to operate the ship properly; (4) failed to warn Plaintiff of potentially dangerous conditions; and (5) provided a vessel with equipment unfit for its intended purpose. On this basis, Plaintiff prays for $1,000,000.00 in damages. Plaintiff's second cause of action, the subject of the instant matter, seeks maintenance and cure related to his injuries. In this respect, Plaintiff prays for a judgment of reasonable maintenance and cure and $100,000.00 in pu-

nitive damages for Defendant's alleged willful failure to provide maintenance and cure.

Defendant filed a motion for partial summary judgment on October 31, 1994. In so moving, Defendant alleges that the availability of Medicare and Medicaid satisfies its obligation to cure, just as the former provision of gratuitous treatment by the Public Service Health Hospitals satisfied a shipowner's obligation to cure; thus, Defendant moves for summary judgment only as to count two of the complaint. Defendant also asserts that because the concept of cure sounds in contract, as opposed to tort, the collateral source rule has no application to the instant matter.

Plaintiff opposes Defendant's motion on several grounds. Plaintiff first asserts that summary judgment is not appropriate at this stage of the proceedings because additional discovery is required.[1] Second, Plaintiff asserts that claims for maintenance and cure are not proper subjects of a summary judgment motion. Third, Plaintiff suggests that an employer has an unyielding obligation to provide cure to an injured seaman. Fourth, he argues that Defendant's act of approving his medical treatment estops Defendant from denying cure liability.[2] Fifth, Plaintiff argues that Medicare/Medicaid are not "free" medical services. Finally, he asserts that Medicare/Medicaid payments are collateral sources of compensation and that the collateral source rule prohibits Defendant from reducing its liability by any amounts received by Plaintiff from such sources.

## II.

■ Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Summary judgment is appropriate where parties do not dispute material facts that might affect the outcome of an action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The movant bears the burden of proving the absence of any genuine issues of material fact, and the Court must view the facts and the inferences drawn therefrom in the light most favorable to the non-moving party. *Ballinger v. North Carolina Agricultural Extension Service*, 815 F.2d 1001, 1004 (4th Cir.1987).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). Where no genuine issue of material fact exists, the Fourth Circuit has imposed an obligation on the trial judge "to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987).

■ Once the movant has met this burden, and a properly supported motion is before the Court, a non-moving party, who will bear the burden of proof at trial on a dispositive issue, may not rest upon mere allegations or denials contained in the pleadings, but must set forth specific facts with affidavits, depositions, interrogatories or other evidence to show a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct.

1. The Court does not reach this point because Plaintiff's counsel, by letter dated December 23, 1994, informed the Court that "the parties have no additional evidence to present and request that the motion be decided" on the current record. Ltr. from Plaintiff's Counsel, December 23, 1994.

2. The Court does not address this issue because the record only reveals that Defendant *authorized* Plaintiff's surgery. Plaintiff's Response Memorandum, Ex. 2. There is absolutely no evidence that Defendant guaranteed to pay for the services rendered, as Plaintiff asserts in his memorandum. *Id.* In any event, the Court determines that the result would not differ even if the evidence *did* establish that Defendant guaranteed payment of Plaintiff's medical expenses because such a guarantee would represent an enforceable contractual obligation to the medical services provider separate and distinct from the shipowner's maritime obligation to compensate an injured seamen for actual out of pocket medical expenses.

2548, 2553, 91 L.Ed.2d 265 (1986); *Allstate Financial Corp. v. Financorp, Inc.,* 934 F.2d 55, 58 (4th Cir.1991).

 "Maintenance and cure" is a firmly established and long standing "contractual form of compensation given by general maritime law to a seaman who falls ill while in the service of his vessel. The shipowner's obligation is deep-rooted in maritime law and is an incident or implied term of a contract for maritime employment." *Evans v. Blidberg Rothchild Co.,* 382 F.2d 637, 639 (4th Cir. 1967). "Maintenance" refers to the provision of food and lodging, "cure" refers to the shipowner's responsibility to care for ill or injured seaman, usually in the form of compensation for medical care. *See* 2 Norris, *The Law of Seamen* § 26:6 (4th ed.1985). For a seaman to recover for cure, he must prove that he has actually expended his own funds or personally incurred liability for medical expenses. *Gosnell v. Sea–Land Service, Inc.,* 782 F.2d 464, 468 (4th Cir.1986); *see also Al–Zawkari v. American Steamship Co.,* 871 F.2d 585, 588 (6th Cir.1989) (acknowledging "existing legal precedent which explains that the purpose of cure is purely compensatory and unrelated to the negligence of the employer and restricts a seaman's recovery to only out-of-pocket 'cure' expenses").[3] Finally, given its contractual nature, a cause of action for maintenance and cure is not based on the negligence of the shipowner and must be distinguished from a cause of action for damages resulting from personal injuries. Norris at § 26:8.

Until 1981, seamen could receive medical treatment at Public Health Service Hospitals free of charge.[4] The expenses associated with maintaining and operating these hospitals were originally paid by shipowners, but from 1906 until 1981 were paid out of United States Treasury general funds. Norris at § 26:54. Moreover, it was firmly established that the existence of this governmental service satisfied the shipowner's obligation to cure: "[A] seaman who refuses free treatment ... without just cause, cannot further hold the shipowner to his duty to provide maintenance and cure" unless he establishes the unavailability of "adequate and proper care" at the hospital. *Kossick v. United Fruit Co.,* 365 U.S. 731, 737, 81 S.Ct. 886, 891, 6 L.Ed.2d 56 (1961); *accord Roberson v. S/S American Builder,* 265 F.Supp. 794 (E.D.Va.1967) (seaman could not recover costs of private medical care because free available Public Health Service Hospital treatment fulfilled shipowner's obligation to cure).

### III.

 Whether or not eligibility for Medicare and Medicaid satisfies a shipowner's duty to cure, in the same fashion that free treatment at Public Health Service Hospitals satisfied the duty, is an issue of first impression in this jurisdiction. In support of an affirmative response to this question, Defendant relies on *Moran Towing & Transportation Co., Inc. v. Lombas,* 843 F.Supp. 885 (S.D.N.Y.1994), the only reported case on this precise issue. In *Moran,* a seaman alleged that he was injured when he slipped and fell when working as a captain on the Moran's tugboat. Moran filed a declaratory judgment action seeking a determination of maintenance and cure liability and the parties subsequently filed cross-motions for summary judgment. Moran argued that the availability of free medical treatment under Medicare satisfied the duty to provide care on the same basis that the free services provided by the Public Health Service Hospitals satisfied the duty. *Id.* at 887. Lombas disagreed, suggesting that the cure obligation is not discharged by Medicare eligibility because the shipowner itself had made no payments to Medicare. The court agreed with Moran, denoting Medicare as the "func-

---

**3.** The *Al–Zawkari* court, while not considering the impact of Medicare or Medicare on the cure obligation, held that a shipowner's duty to cure was completely satisfied by its contributions to the Seafarers' Welfare Plan. In so holding, the court relied heavily on existing precedent that emphasizes the compensatory nature of the cure obligation. 871 F.2d at 588–89.

**4.** The Omnibus Budget Reconciliation Act of 1981 ended a seaman's right to receive free medical care at Public Health Service Hospitals. Pub.L. 97–35, 95 Stat. 357 (Aug. 13, 1981).

tional equivalent" of the gratuitous Public Health Service Hospital services. The court rationalized its holding in the following manner:

[T]he particular source of public funding for such social programs is [not] relevant to the analysis ... Cure is an implied contractual obligation of the shipowner to ensure that a seaman injured in the service of the ship does not bear out-of-pocket expense. If competent public medical services are available to the seaman without charge, he may not spurn them and assert a claim for cure against his employer. That long-established admiralty rule does not depend upon the niceties of funding.

*Id.* at 888. The court, however, qualified this holding by stating its assumption "that Lombas qualifies for Medicare, and that there are available within a reasonable distance of his residence surgeons competent to perform the indicated procedure and who will accept the Medicare allowance in full payment of their fees." *Id.* at 887. The court placed the burden of proving Medicare ineligibility on the seaman. *Id.*

Plaintiff contends that *Moran* was incorrectly decided. In arguing that Medicare and Medicaid do not discharge a shipowner of its duty to cure, Plaintiff cites various Medicare and Medicaid statutes and regulations. Plaintiff concludes that various third party liability rules and secondary payer provisions contained therein prohibit payment of his medical bills by these programs, thus leaving intact the Defendant's cure obligation.[5]

Specifically, Plaintiff cites 42 C.F.R. § 433.139[6] presumably for the proposition that a shipowner's care obligation is a third party liability within the meaning of that regulation and that Medicare/Medicaid will not pay for any related expenses. In the same vein, the Plaintiff notes a section of the United States Code that places an obligation on the "State ... [to] take all reasonable measures to ascertain the legal liability of third parties (including health insurers, group health plans ... service benefit plans, and health maintenance organizations) to pay for care and services under the plan." 42 U.S.C. § 1396a(a)(25)(A). Plaintiff also cites the Medicare secondary payer provision which prohibits Medicare payments in situations where payment is made or is reasonably expected to be made promptly under a group health plan or a "workmans compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan ... or no fault insurance." 42 U.S.C. § 1395y(b)(2)(A). Finally, Plaintiff cites various provisions of the Code of Virginia, including sections 32.1–325.2[7] and 38.2–508.3,[8] for the same general propo-

---

5. In this sense, Plaintiff asserts that Medicare and Medicaid are not "free" in the same way that services provided by the Public Health Service Hospitals were free.

6. The C.F.R. section provides, in part:

 If the [State] agency has established the probable existence of third party liability at the time the claim is filed, the agency must reject the claims and return it to the provider for a determination of the amount of liability.

 42 C.F.R. § 433.139(b)(1).

7. Section 32.1–325.2 provides, in part:

 § 32.1–325.2. Department is a payor of last resort.—

 A. Insurers, including group health plans ... health services plans, service benefit plans and health maintenance organizations, are prohibited from including any clause in health care contracts which would exclude enrolling an individual or in making any payment for benefits to the individual or on the individual's behalf for health care when the individual is eligible for medical assistance.

 B. The Department of Medical Assistance Services will be the payor of last resort to any insurer ... which contracts to pay health care costs for persons eligible for medical assistance in the Commonwealth.

 C. To the extent the Department of Medical Assistance Services has made payment for medical services where a third party has a legal obligation to make payment for such services, the Commonwealth shall automatically acquire all rights to such payment from the third party.

 D. The term "insurer" ... shall be deemed to include without limitation "insurance carriers."

 Va.Code Ann. § 32.1–325.2. Plaintiff presumably relies on subsection (C) as the basis of its argument.

8. Section 38.2–508.3, one of numerous unfair trade practices set forth in the Virginia insurance regulations, provides in pertinent part:

 § 38.2–508.3. Consideration of Medicaid eligibility prohibited.—A. No person shall, in determining the eligibility of an individual for

sition.[9]

The Court is not persuaded that these statutory and regulatory provisions compel a result different from that in *Moran*. To begin, the provision of the Code of Virginia involving third party liability in the Medicaid context merely provides instruction for the Department of Medical Assistance Services when a relationship exists between potential Medicaid recipients and *insurers*. *See supra* note 7 (setting forth section 32.1–325.2). Moreover, that section represents the Commonwealth's compliance with certain federal requirements that must be satisfied before the state receives federal funding participation for its Medicaid plan. *See* 42 U.S.C. § 1396a(a); 42 C.F.R. §§ 433.135 et seq. While subsection (C) of Virginia Code section 32.1–325.2 speaks generally of third party liability, the Court reads that subsection in the context of the entire statute, as well as the federal statutory and regulatory guidelines cited above, and concludes that the language regarding the "legal obligations" of third parties refers to contractual insurance obligations of insurers, health services plans and health maintenance organizations, *not* obligations of private employers arising under maritime law. Likewise, the specific purpose of Virginia Code section 38.2–508.3 is to govern and set guidelines for insurance carriers. Nor do the federal statutes cited by Plaintiff bear on the instant matter. For example, reading the Medicare secondary payor provision in its entirety and within the general scheme of the Medicare statute plainly indicates that this provision addresses contractual insurance obligations of insurers, an entirely different situation than the matter at hand. Finally, the Court fails to note any overwhelming policy justifications for stretching these statutory principles to apply to the instant matter.

Plaintiff's final argument concerns the collateral source rule. Specifically, he asserts that Medicare and Medicaid payments are a collateral source of funds that may not be set off against the shipowner's cure liability. The Court is not persuaded by this argument for several reasons. First, the collateral source rule is generally applicable only. in the area of tort, not contract. As stated previously, an action for maintenance and cure sounds in contract and must be considered separate and distinct from any related negligence cause of action; thus, the collateral source rule generally does not apply to Plaintiff's contractual cause of action for maintenance and cure. *See Moran*, 843 F.Supp. at 887. Moreover, inapplicability of the collateral source rule is particularly appropriate where the seaman has not himself incurred actual expenses. *See Gauthier v. Crosby Marine Service, Inc.*, 752 F.2d 1085 (5th Cir.1985) (applying collateral source rule to insurance payments received by seaman because seaman purchased medical insurance policy with *own* funds).[10]

## IV.

There being no material facts in dispute, the Court holds, as a matter of law, that Medicare or Medicaid eligibility can satisfy a

coverage under an individual or group accident and sickness policy, health services plan or health maintenance organization contract, consider the eligibility of such individual for medical assistance ... from this Commonwealth or from any other state.
 B. No person shall, in determining benefits payable to, or on behalf of an individual covered under an individual or group accident and sickness policy, health services plan or health maintenance organization contract, take into account the eligibility of such individual for medical assistance ... from this Commonwealth or from any other state.
Va.Code Ann. § 38.2–508.3.

9. Plaintiff has also argued that the existence of several statutory medical liens indicates that Medicaid payments are not "free" as that term is employed in *Moran*. *See* Va.Code Ann. §§ 8.01–66.2 & 66.9. The Court is simply not persuaded that these provisions are helpful to resolving the instant question.

10. In concluding that the shipowner could not set off a medical insurance payout received by the seaman against its cure liability, the *Gauthier* court was heavily influenced by the fact that the seaman purchased the policy himself, thus incurring actual expenses. 752 F.2d at 1090. The court contrasted the facts of *Gauthier* with a situation in which a seaman has "not incurred any personal expenses, but ha[s] lived off the charity of others or the *public at large." Id.* (emphasis added). In the latter scenario, the court plainly indicated that the collateral source rule would not apply.

shipowner's duty to cure. In so holding, the Court does not necessarily view Medicare or Medicaid as the "functional equivalent" of the Public Health Service Hospitals. The Court, instead, emphasizes the compensatory nature of cure. As previously noted, where a seaman has access to medical care free of charge, thus incurring no out-of-pocket expense, shipowners have not been required to pay the seaman additional compensation. *See Gosnell,* 782 F.2d at 468 (all expenses paid by union medical plan). Indeed, this rationale was the guiding force behind the Public Health Service Hospitals jurisprudence. *See e.g., The Bouker, No. 2,* 241 F. 831 (2d Cir.), *cert. denied* 245 U.S. 647, 38 S.Ct. 9, 62 L.Ed. 529 (1917). Consequently, the Court concludes that the same rationale applies where a seaman's medical expenses are paid by the government under Medicare or Medicaid.[11] The Court, however, limits this holding to situations in which a seaman is readily eligible for Medicare or Medicaid *and* competent medical services are available by a provider willing to accept Medicare and Medicaid payments in full satisfaction of his or her fees. The burden of establishing program ineligibility and incompetency of the provider rests upon the seaman as he is in the best position to ascertain such facts.

In the instant matter, the Plaintiff's deposition reveals that he is, in fact, eligible for Medicaid. Memorandum in Support of Summary Judgment, Ex. 3 at 18–19. Indeed, Plaintiff has testified that certain medical bills unrelated to the accident have been so paid. *Id.* at 23. Most importantly, the record wholly fails to reveal that Plaintiff has incurred any "out-of-pocket" expenses whatsoever. On these facts, Defendant should not be held liable for its duty to cure, assuming Medicare and/or Medicaid will take responsibility for payment of Plaintiff's medical expenses. Accordingly, the Court will grant

Defendant's motion for partial summary judgment.[12]

---

11. The Court is cognizant of the Plaintiff's argument that, at a minimum, he paid for his Medicare and Medicaid through taxation. While this assertion may be valid, it is undeniable that the operation and maintenance of the Public Health Service Hospitals were financed entirely with public funds for seventy-five years, and courts nonetheless consistently noted the cost-free nature of medical care from those facilities. *See*

*e.g., The Bouker, No. 2,* 241 F. at 831; *Calmar Steamship Corp. v. Taylor,* 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938); *Kossick,* 365 U.S. at 737, 81 S.Ct. at 891.

12. This holding is strictly limited to the duty to cure an injured seaman; thus, Defendant's obligation of maintenance is in no way modified.