MORAN TOWING & TRANSPORTA-
TION, CO., Plaintiff–Appellee,

v.

Whitney LOMBAS, Defendant–Appellant.

No. 870, Docket 94–7286.

United States Court of Appeals,
Second Circuit.

Argued Dec. 20, 1994.

Decided June 16, 1995.

Daniel F. Hayes, Garden City, NY, for defendant-appellant Whitney Lombas.

Fred R. Profeta, Jr., Profeta & Eisenstein, New York City (Michael J. Orlofsky, Profeta & Eisenstein, of counsel), for plaintiff-appellee Moran Towing & Transp., Co.

Before: VAN GRAAFEILAND, WALKER, and CABRANES, Circuit Judges.

WALKER, Circuit Judge:

This case concerns an issue of first impression involving the venerable maritime doctrine of maintenance and cure, which requires the shipowner to provide food and lodging ("maintenance") and necessary medical services ("cure") for a seaman who is injured or becomes ill while in the employ of the ship. More precisely, this appeal presents the question whether a shipowner has a cure obligation when Medicare is available to the seaman.

The seaman defendant appeals from a declaratory judgment entered in the United States District Court for the Southern District of New York (Charles S. Haight, J.) holding that, since Medicare was available to defendant, plaintiff had no duty or obligation to pay maintenance or cure arising out of defendant's injury, *Moran Towing & Transp. Co. v. Lombas*, 843 F.Supp. 885 (S.D.N.Y. 1994). The defendant does not appeal the

maintenance aspect of the decision. We affirm the holding as to cure.

## BACKGROUND

The facts are not in dispute. Whitney Lombas, a Louisiana resident, was employed as a tugboat captain by Moran Towing & Transportation, Co. ("Moran") in April, 1988 when he suffered the injury that is the basis of this appeal. While carrying a wire cable on a dock in Staten Island, New York, Lombas fell, injuring his neck and cervical spine. From May, 1988 until the end of January, 1992, Moran paid Lombas $15 per day for maintenance and cure, resulting in a total of $15,045. The company also paid cure in an additional amount of $34,152 on behalf of Lombas for his medical care, including surgeries. After his injury, Lombas began receiving disability payments from Moran, which will continue until he no longer has a disability or until he reaches the age of 65, whichever occurs first. Lombas also receives monthly social security disability benefits, which offset his entitlements under Moran's disability plan. Because of his disability, Lombas is also eligible for Medicare.

At some point before Lombas commenced litigation, a surgeon recommended that Lombas undergo additional cervical surgery. The physician, however, would not accept the Medicare allowance for the procedure. Lombas then contacted Moran, insisting that it cover the expense of the surgery. Moran took the position that Lombas should select a competent surgeon who would accept the Medicare allowance and that, unless no such surgeon was available, its "cure" obligation was satisfied by the availability of Medicare.

The case reached the Southern District of New York by a circuitous route. Lombas originally brought a Jones Act claim against Moran in the Eastern District of Louisiana. After that case was transferred to the Southern District of New York, where it is still pending, Lombas indicated his intent to bring a separate state court proceeding in Louisiana for maintenance and cure. Desiring to keep the litigation in the Southern District of New York, Moran commenced this declaratory judgment action to establish the limits of its obligation to Lombas for maintenance and cure and to recover any alleged overpayments. The parties cross-moved for summary judgment.

## DISCUSSION

We affirm for the reasons set forth in Judge Haight's thoughtful opinion, *Moran Towing & Transp. Co. v. Lombas*, 843 F.Supp. 885 (S.D.N.Y.1994), and write this opinion only in order to make a few additional observations. As Judge Haight noted, for a period in the history of the doctrine of maintenance and cure, seamen were able to receive virtually cost-free treatment in the United States Public Health Service marine hospitals, and "the caselaw made it clear that the availability of such cost-free 'cure' satisfied the shipowner's contractual obligation to provide cure." *Id.* at 886; *see also Kossick v. United Fruit Co.*, 365 U.S. 731, 737, 81 S.Ct. 886, 891, 6 L.Ed.2d 56 (1961) (noting "that a shipowner's duty to provide maintenance and cure may ordinarily be discharged by the issuing of a master's certificate carrying admittance to a public hospital, and that a seaman who refuses such a certificate or the free treatment to which it entitles him without just cause, cannot further hold the shipowner to his duty to provide maintenance and cure."); *Rodriguez Alvarez v. Bahama Cruise Line, Inc.*, 898 F.2d 312, 315 (2d Cir.1990) (finding that "a seaman is obligated to accept free medical services ... [unless] those medical services are inadequate"). In *The Bouker No. 2*, 241 F. 831, 835 (2d Cir.), *cert. denied*, 245 U.S. 647, 38 S.Ct. 9, 62 L.Ed. 529 (1917), we stated that "[i]t is not permissible for a person entitled to care from his ship (and equally entitled to have that care bestowed in a Marine Hospital) to deliberately refuse the hospital privilege, and then assert a lien upon his vessel for the increased expense which his whim or taste has created." Only if the seaman could not obtain the necessary treatment through the public hospitals did the shipowner retain its cure obligation. *Kossick*, 365 U.S. at 737, 81 S.Ct. at 891.

Reasoning that "Medicare is the functional equivalent of the previously available free treatment at Public Health Services hospitals," *Moran*, 843 F.Supp. at 887, Judge

Haight concluded that "the availability to Lombas under the Medicare program of free surgical care satisfies Moran's obligation to furnish that element of cure," *id.* We agree with the district judge that there is no "reasoned distinction ... in law or policy" between Medicare and the provision of health care through the public hospitals to the extent that Medicare-covered treatment is paid for by the government. *Id.* This idea finds support in language in *Jones v. Reagan,* 748 F.2d 1331, 1334 (9th Cir.1984), *cert. denied,* 472 U.S. 1029, 105 S.Ct. 3505, 87 L.Ed.2d 636 (1985), which addressed claims by seamen that the termination of their right to receive free medical care at the public hospitals through the Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, 95 Stat. 357 (1981), violated their constitutional and contractual rights. In rejecting those claims, the Ninth Circuit pointed out that seaman had other sources of medical care available to them, including "government-financed social programs such as Medicare or Medicaid." *Id.* at 1337. In addition, the court surmised that "Congress might have concluded that permanently disabled seamen, like active seamen, had [among other resources] ... access to other governmental programs that would substitute for free treatment in the Public Health hospitals." *Id.* at 1339.

The district court correctly rejected Lombas's assertion that Moran could not have fulfilled its cure obligation through the availability of Medicare treatment because Moran had not made any payment on behalf of Lombas to Medicare. Relying on *The Bouker No. 2,* 241 F. at 831, which "did not turn on the fact that the shipowner had contributed directly to the cost of maintaining marine hospitals; nor could it have done so, since after June 30, 1906, such expenses were paid 'out of the general fund of the United States Treasury,'" Judge Haight concluded that "the particular source of public funding for such social programs is [not] relevant to the analysis." *Moran,* 843 F.Supp. at 888. Describing cure as "an implied contractual obligation of the shipowner to ensure that a seaman injured in the service of the ship does not bear out-of-pocket medical expense," he found that the "long-established admiralty rule does not depend upon the

niceties of funding." *Id.* Judge Haight added that any attempt by Lombas to rely on tort law in claiming that the cure obligation survived Lombas's eligibility for Medicare fails since "[t]ort cases furnish no guidance in the area of maintenance and cure, where the shipowner's obligation sounds in contract." *Id.*

In discussing the right of maintenance and cure as an implied contractual obligation, the district court followed the reasoning of this and other circuits, which hold that such a right "lies on the borderline between 'contract' and 'quasi-contract.'" *Wilson v. United States,* 229 F.2d 277, 281 (2d Cir.1956); *Wactor v. Spartan Transp. Corp.,* 27 F.3d 347, 352 (8th Cir.1994); *Brister v. A.W.I., Inc.,* 946 F.2d 350, 360 (5th Cir.1991); *Mahramas v. American Export Isbrandtsen Lines, Inc.,* 475 F.2d 165, 170 (2d Cir.1973); *Sperbeck v. A.L. Burbank Co.,* 190 F.2d 449, 452 (2d Cir.1951). The Supreme Court in ruling that a seaman was entitled to reasonable attorney's fees as damages for the shipowner's failure to pay for maintenance, has clarified that the right of maintenance and cure is not purely contractual in nature. *Vaughan v. Atkinson,* 369 U.S. 527, 530–31, 82 S.Ct. 997, 999–1000, 8 L.Ed.2d 88 (1962); *see also Kraljic v. Berman Enters., Inc.,* 575 F.2d 412, 413–14 (2d Cir.1978). While the *Vaughan* Court conceded that the doctrine is contractual "'in the sense that it has its source in a relation which is contractual in origin,'" 369 U.S. at 532–33, 82 S.Ct. at 1001, it noted that it is not a contractual right in that it is a right "imposed by the law itself as one annexed to the employment" and not subject to abrogation by contract, *id.*

On appeal, Lombas continues to allege that because Medicare was not funded by the shipowner, either directly or indirectly, Medicare-funded treatment cannot satisfy Moran's cure obligation. Lombas's argument essentially invokes the collateral source rule, a tort doctrine prohibiting the tortfeasor from reducing its liability by the amount of benefits conferred on the injured party from other sources. Restatement (Second) of Torts § 920A(2); *see also Folkestad v. Burlington Northern, Inc.,* 813 F.2d 1377, 1380 (9th Cir.1987) (noting that under the

collateral source rule "the tortfeasor's liability generally may not be reduced by payments which the injured party received from insurance unless the insurance was procured by the tortfeasor"); *Perry v. Allegheny Airlines, Inc.,* 489 F.2d 1349, 1352 (2d Cir.1974) (prohibiting "evidence by the defense of compensation to a plaintiff from an independent source on account of the accident forming the basis of the suit").

 We agree with Judge Haight's conclusion that "[t]ort cases furnish no guidance" in this area and that therefore a seaman's right to cure is not subject to the collateral source rule, *see Davis v. Odeco, Inc.,* 18 F.3d 1237, 1246 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 78, 130 L.Ed.2d 32 (1994). The collateral source rule is intended to insure that the "benefit that is directed to the injured party [from a third party is] not shifted so as to become a windfall for the tortfeasor" since "it is the tortfeasor's responsibility to compensate for all harm that he causes." Restatement (Second) of Torts § 920A(2) cmt. b. In contrast, the doctrine of cure is "unrelated to the negligence of the employer." *Al–Zawkari v. American S.S. Co.,* 871 F.2d 585, 588 (6th Cir.1989). Rather, the doctrine was developed to ensure that the seaman does not incur expense in receiving medical treatment. The "purpose of cure is purely compensatory and ... restricts a seaman's recovery to only out-of-pocket 'cure' expenses." *Id.* Thus, a "vessel owner has no obligation to provide maintenance and cure if it is furnished by others at no expense to the seaman." *See Shaw v. Ohio River Co.,* 526 F.2d 193, 201 (3d Cir.1975). Consequently, we affirm the district court's conclusion that the source of funding is not relevant to its decision.

Finally, we turn briefly to the effect of co-payments and premiums on a shipowner's cure liability. Lombas only touched upon the question of co-payments. By noting that a Medicare beneficiary is responsible for a 20% co-payment for the total medical expense incurred, Lombas seemed to suggest that Moran should at least be held liable for a 20% co-payment for the medical treatment in question. At oral argument, Lombas's counsel indicated that Lombas had eventually undergone surgery with a Medicare provider, although he was not sure whether the physician waived the co-payment provision. Moran pointed out that Lombas never submitted any paperwork indicating what portion of the surgical costs were covered by the Medicare allowance and the record is devoid of evidence that Lombas was required to make a co-payment. Because the record on this issue is incomplete, and because it was not presented to the district court, we decline to reach this issue today. Likewise we will not consider the question of the effect of any Medicare premiums paid by Lombas since this issue was not even raised on appeal, much less before the district court.

For the forgoing reasons, we affirm the judgment below.