**Zachary Lamar BLIGE, Plaintiff,**

v.

**M/V GEECHEE GIRL, her tackle, engines, furniture and appurtenances, in rem, and Michael Casey, in personam, Defendants.**

**In the Matter of the Complaint of Michael Casey, owner of the shrimp trawler Geechee Girl, For Exoneration from or Limitation of Liability.**

**Nos. 400CV145, 400CV319.**

United States District Court,
S.D. Georgia,
Savannah Division.

July 25, 2001.

1350

Thomas Langston Bass, Jr., Brennan, Harris & Rominger, Savannah, GA, for Plaintiff.

Wilson R. Smith, Smith & Jenkins, PC, Vidalia, GA, Edwin D. Robb, Jr., Todd Michael Baiad, Bouhan, Williams & Levy, LLP, Savannah, GA, for Defendants.

Kirby Clarice Mason, Hunter, Maclean, Exley & Dunn, Savannah, GA, for Interested Party.

## ORDER

EDENFIELD, District Judge.

## I. INTRODUCTION

In this Jones Act, 46 U.S.C.App. § 688/Maintenance and Cure [1] case, defendant Mike Casey moves for partial summary judgment, doc. ## 32, 36 exh. A, over plaintiff Zachary Lamar Blige's opposition. Doc. # 37. Casey also moves, unopposed, to strike a portion of the pleadings.[2] Doc. # 27.

## II. BACKGROUND

Blige was working as a striker (deck hand assisting with shrimping) on Casey's shrimp trawler, the Geechee Girl. Doc. # 34 (attachment; Blige dep. at 43). On 9/6/97, he was injured when struck in the face by the cable guide while bringing in a shrimp net. Doc. # 37 at 1; # 30 at 2 ¶ 8; # 34 (attachment; Blige dep. at 43).

Blige submits that he was injured because "the tension on the cable caused the

---

1. "The Jones Act provides a cause of action in negligence for 'any seaman' injured 'in the course of his employment.' 46 U.S.C.App. § 688(a). Under general maritime law prevailing prior to the statute's enactment, seamen were entitled to maintenance and cure from their employer for injuries incurred in the service of the ship and to recover damages from the vessel's owner for injuries received by seamen in consequence of the unseaworthiness of the ship, but they were not allowed to recover an indemnity for the negligence of the master, or any member of the crew. .... Congress enacted the Jones Act in 1920 to remove the bar to suit for negligence." *Chandris, Inc. v. Latsis,* 515 U.S. 347, 354, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995) (cites and quotes omitted); *see Guevara v. Maritime Overseas Corp.,* 59 F.3d 1496, 1512 (5th Cir.1995) ("'(T)he denial of maintenance and cure benefits gives rise to only one cause of action—failure to pay maintenance and cure—and this one action is cognizable under both the Jones Act and the general maritime law, although the action under the Jones Act for the failure to pay maintenance and cure requires a personal injury as well").

2. Technically the Geechee Girl appears as a co-defendant in 400CV145, but for convenience the Court will refer only to Casey (hence, "defendant" in the singular sense) throughout this Order.

cable guide to leave its housing." Doc. # 37 at 1; # 30 at 5. Conversely, Casey contends that Blige was injured as a result of his own negligence. He claims "Blige knew that, when setting out the nets, he should remove/lift the cable guide from the brackets," and that because he failed to do so, "the cable guide released from the brackets and struck him in the left forehead." Doc. # 30 at 7.

Following the injury, Blige received treatment at two hospitals and from three doctors. Doc. # 1 at 2 ¶ 15; # 30 at 2 ¶ 9; # 34 (attachment; Younggreen dep. at 2–6; Count dep. at 4–6); # 36 exhs. A, B.

Blige seeks, inter alia, "maintenance and cure under the Jones Act, payment for permanent injuries, damages as a result of the unseaworthiness of the shrimping vessel, attorneys fees for the defendants' failure to pay maintenance and cure, and punitive damages for defendants' failure to pay maintenance and cure." Doc. # 37 at 2; see also # 30 at 6.

At issue here is whether: (1) punitive damages are available for the failure to pay maintenance and cure; and (2) plaintiff is entitled to cure for medical expenses paid by the State of Georgia Department of Community Health (Medicaid).

### III. ANALYSIS

#### A. Punitive Damages

▆▆▆▆ The first issue here is whether, in light of *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), the Jones Act precludes punitive damages for failure to pay maintenance and cure available under general maritime law. Casey argues preclusion for maintenance and cure[3] claims, citing *Hollinger v. Kirby Tankships, Inc.*, 910 F.Supp. 571 (S.D.Ala.1996). Doc. # 33 at 2–3. The *Hollinger* court, relying on *Miles* and *Guevara* at 1499, held that punitive damages are precluded under general maritime law for maintenance and cure claims.[4] *Hollinger*, 910 F.Supp. at 572. It predicted the Eleventh Circuit would follow *Guevara* when presented with the issue. *Id.* at 573; see also *Wininger v. Hendry Corp.*, 1999 WL 33218593 at *2 (M.D.Fla.1999) (unpublished) (following *Guevara* and *Hollinger* to hold that "punitive damages are unavailable in disputes concerning the payment of maintenance and cure," but failing to acknowledge contrary Eleventh Circuit precedent: *Hines v. J.A. LaPorte Inc.*, 820 F.2d 1187, 1189 (11th Cir.1987) ("both reasonable attorney's fees and punitive damages may be legally awarded in a proper case")).

Conversely, Blige submits that punitive damages are still available for maintenance and cure claims in light of *Hines.* Doc. # 37 at 3. But the *Hines* court relied primarily on Fifth Circuit cases since overruled by *Guevara.* See *Hines*, 820 F.2d at 1188–89; *Guevara*, 59 F.3d at 1509 ("Of

---

3. "Under general maritime law, seamen are entitled to bring an action for 'maintenance and cure,' a remedy available to compensate seamen who fall ill or become injured during their term of employment." *Cabrera Espinal v. Royal Caribbean Cruises, Ltd.*, 253 F.3d 629, 630–31 (11th Cir.2001). " 'Maintenance' is the right of a seaman to food and lodging.... 'Cure' is the right to necessary medical services." *Guevara*, 59 F.3d at 1499.

4. "[P]unitive damages were generally held to be available in the pre-*Miles* era for claims under general maritime law, including the willful failure to pay maintenance." *Glynn v. Roy Al Boat Management Corp.*, 57 F.3d 1495, 1503 (9th Cir.1995) (collecting cases); *CEH, Inc. v. F/V Seafarer*, 70 F.3d 694, 699 (1st Cir.1995) ("[a]lthough rarely imposed, punitive damages have long been recognized as an available remedy in general maritime actions where defendant's intentional or wanton and reckless conduct amounted to a conscious disregard of the rights of others") (collecting cases).

course, *Hines's* reliance on [*Complaint of*] *Merry Shipping* [*Inc.*, 650 F.2d 622 (5th Cir.1981)] is now analytically problematic because ... *Merry Shipping* was effectively overruled by the later decision in *Miles*") (cite omitted); *id.* at 1500 ("we conclude that [the approval of punitive damages by *Holmes v. J. Ray McDermott & Co.*, 734 F.2d 1110 (5th Cir.1984)] is no longer justifiable in cases of willful nonpayment of maintenance and cure").

The Eleventh Circuit has not addressed the issue since *Hines*, though it has acknowledged the *Hines* rule in dicta. *See In re Amtrak Sunset Ltd. Train Crash*, 121 F.3d 1421 (11th Cir.1997) (punitive damages may be available in "exceptional circumstances such as willful failure to furnish maintenance and cure"); *Flores v. Carnival Cruise Lines*, 47 F.3d 1120, 1127 (11th Cir.1995) ("Carnival did not [violate] any established legal duty toward Flores, and therefore did not exhibit willful and wanton misconduct, which is the standard Flores must meet to recover punitive damages in admiralty law") (citing *Hines*, 820 F.2d at 1188); *Kasprik v. U.S.*, 87 F.3d 462, 464 (11th Cir.1996). Would the Eleventh Circuit still reach the same result today?

■ In abandoning its earlier position (that punitive damages are available for maintenance and cure claims), the *Guevara* court applied *Miles's* analytical framework. *See Guevara*, 59 F.3d at 1506. That framework basically assures that "when a statute resolves a particular issue ... the general maritime law must comply with that resolution." *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 121 S.Ct. 1927, 1931–32, 150 L.Ed.2d 34 (2001). To this end, the *Miles* Court held that loss of society and future earnings may not be recovered in a seaman's wrongful death and survival action, whether brought under the Jones Act, the Death on the High Seas Act ("DOH-

SA") or general maritime law. Although general maritime law would allow such a recovery, DOHSA and the Jones Act expressly did not allow such damages, and the Court held that uniformity would thus be compromised if judicially created maritime law allowed remedies more expansive than those allowed by federal statutes. *La Voie v. Kualoa Ranch and Activity Club, Inc.*, 797 F.Supp. 827, 829 (D.Haw. 1992). The *Miles* court thus reminded that "Congress retains superior authority in 'admiralty' matters, and an admiralty court must be vigilant not to overstep the well-considered boundaries imposed by federal legislation. These statutes both direct and delimit our actions." 498 U.S. at 27, 111 S.Ct. 317.

■ The *Guevara* court termed this the *Miles* "uniformity principle." 59 F.3d at 1506. Under this principle, "general maritime law will not expand the available damages when Congress has spoken to the relief it deems appropriate or inappropriate." *Id.; see Miles*, 498 U.S. at 31, 111 S.Ct. 317 (cite and quotes omitted) ("in an area covered by statute, it would be no more appropriate to prescribe a different measure of damage than to prescribe a different statute of limitations, or a different class of beneficiaries' "). So, if the Jones Act provides a cause of action for maintenance and cure, and limits the availability of punitive damages, then such damages cannot be awarded under general maritime law.

■ The *Guevara* court applied the *Miles* "uniformity principle" when it concluded that, because punitive damages for a maintenance and cure claim are unavailable under the Jones Act, 59 F.3d at 1506, "the same cause of action under the general maritime law for the failure to pay maintenance and cure cannot provide a punitive recovery, even if willfulness is

demonstrated." *Id.* at 1512. Hence, once the factual setting of a case is found to be covered by the Jones Act, punitive damages must be tossed overboard. *Id.* at 1506 n. 7.

■ In determining whether the factual setting in *Guevara* was covered by the Jones Act, that court reasoned:

> [T]here are really two "types" of maintenance and cure actions. The tort-like type involves a personal injury; *i.e.*, typically a worsening of the seaman's physical or mental health caused by the failure to provide maintenance or, more likely, cure. The contract-like type need not involve a personal injury (although it may); it need only involve the loss of a monetary outlay. Because the tort-like maintenance and cure action involves a personal injury, however, it overlaps with the personal injury coverage of the Jones Act. Such an action is frequently brought under the Jones Act.... As mentioned, once there is a statutory/general maritime law overlap in the factual circumstances that are covered, the *Miles* damages uniformity principle is invoked, and punitive damages would be precluded under the general maritime action for maintenance and cure.

*Guevara*, 59 F.3d at 1511–12 (footnote and cites omitted).[5]

Other courts have employed similar reasoning. *See Horsley v. Mobil Oil Corp.*, 15 F.3d 200, 203 (1st Cir.1994) ("*Miles* mandates the conclusion that punitive damages are not available in an unseaworthiness action under general maritime law"); *Mil-*

*ler v. American President Lines, Ltd.*, 989 F.2d 1450, 1459 (6th Cir.1993) (punitive damages not available under general maritime law); *see also La Voie*, 797 F.Supp. at 831 ("The Jones Act does not allow for the recovery of punitive damages. If this court allowed a punitive damage claim under general law, it would be supplanting Congress' judgment under the Jones Act") (cite and quotes omitted); *Watters v. Harrah's Illinois Corp.*, 993 F.Supp. 667, 676 (N.D.Ill.1998) ("Pursuant to the *Miles* uniformity principle, punitive damages are not recoverable in the tort-like maintenance and cure action because such damages would not be recoverable in an action under the Jones Act"); *Nurkiewicz v. Vacation Break U.S.A., Inc.*, 771 So.2d 1271, 1274 (Fla.App. 4th Dist.2000) (punitive damages not recoverable in maintenance and cure action); *compare CEH, Inc.*, 70 F.3d at 701 (punitive damages available under general maritime law in property destruction case since "no legislation whatever ... touches upon circumstances involving the reckless or willful destruction of property").

*Kasprik* suggests that the Eleventh Circuit would similarly conclude that maintenance and cure for non-fatal personal injury actions is an area covered by the Jones Act, thus barring punitive damages. *See Kasprik*, 87 F.3d at 465–66 (seaman's claim for punitive damages against U.S. for willful and arbitrary failure to pay maintenance and cure precluded by Suits in Admiralty Act (SAA), 46 U.S.C.App. § 741 *et. seq.*; although the SAA does not

---

5. Nevertheless, general maritime law continues to provide a cause of action for maintenance and cure for injured seamen regardless of their employers' negligence (*i.e.*, a "contract-like" type action). *See, e.g., Rodriguez Alvarez v. Bahama Cruise Line, Inc.*, 898 F.2d 312, 314–15 (2d Cir.1990) ("A seaman is entitled to look to his ship operator for maintenance and cure following any injury incurred

while in the ship operator's employ. The actual cause of the seaman's injury is irrelevant to his right to maintenance and cure"). Because the Jones Act does not cover such actions, there is no statutory overlap. *Guevara*, 59 F.3d at 1512. But, the *Guevara* court nevertheless concluded that punitive damages are likewise unavailable in contract-like actions. *Id.* at 1512–13.

provide specific "remedy" for *arbitrary and willful* denial of maintenance and cure benefits, it provides a remedy for maintenance and cure for personal injury; "Any claim for failure to pay maintenance and cure, even one alleging the arbitrary and willful denial of such, is 'by reason of the same subject matter' as the seaman's entitlement to maintenance and cure resulting from his injury").

This Court therefore agrees with the *Hollinger* court that, when faced with the issue the Eleventh Circuit will follow *Guevara*. Under the *Miles* uniformity principle, then, punitive damages are unavailable in maintenance and cure actions under general maritime law. *See Hollinger*, 910 F.Supp. at 573.[6]

■ Casey, however, does not object to the recovery of attorneys' fees. *Guevara* says they are still available. *See Guevara*, 59 F.3d at 1513; *Hollinger*, 910 F.Supp. at 573–74; *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962) (attorney's fees may be awarded in maintenance and cure cases where the defendant's default is "callous" or "willful and persistent"); *Ripp v. Gulf South Marine Towing, Inc.*, 2001 WL 515253 at * 2 (E.D.La.2001) (unpublished) ("If an employer willfully and wantonly fails to pay maintenance and cure, the seaman may recover past maintenance and cure plus attorneys' fees"). So, Blige may still recover attorneys' fees as long as the proper showing of egregious fault is made.

## B. Medicaid's Effect on Cure

■ Historically, the availability of cost-free cure at the United States Public Health Services marine hospitals satisfied the shipowner's cure obligation. *See Moran Towing & Transp., Co. v. Lombas*, 58 F.3d 24, 25 (2nd Cir.1995) (cite and quotes omitted). Today, the shipowner's cure obligation is satisfied by Medicare/Medicaid, since "it is the functional equivalent of the previously available free treatment at Public Heath Services hospitals." *Id.* at 25–26 (cite and quotes omitted); *id.* at 27 ("a vessel owner has no obligation to provide maintenance and cure if it is furnished by others at no expense to the seaman").

■ Thus, the shipowner is not liable for medical expenses paid by Medicaid, although it remains liable for out of pocket expenses, such as premiums or co-payments. *See In re Pelican Marine Partners*, 1996 WL 665753 (E.D.La.1996) (unpublished) (set-off from employer's maintenance and cure obligation denied where the seaman demonstrated premiums paid by him to his Social Security and Medicare accounts, as well as out-of-pocket expenses, totaling 20 percent of his medical costs); *Gauthier v. Crosby Marine Serv. Inc.*, 752 F.2d 1085, 1090 (5th Cir.1985) (collateral source rule applied to insurance payments received by the seaman because the seaman purchased the medical insurance policy with his own funds); *Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525, 537 (9th Cir. 1962) (seaman's State disability benefits

---

**6.** As one commentator noted:

> The sisterhood of the two circuits continues to lead their jurisprudence down similar paths. Additionally, it is significant that *Guevara* [ ] overrules the precedent upon which the Eleventh Circuit's current law is based. The first seaman to squarely bring this issue before the Eleventh Circuit will likely be unsuccessful—left only with policy

> in support of punitive damages, the seaman's argument will be overwhelmed by the weight of legal support denying punitive damages in the maintenance and cure context.

J. Michael Taylor, *The Death of Punitive Damages in Maritime Maintenance and Cure Actions: Guevara's Progeny and Likely Effect on the Eleventh Circuit*, 48 ALA. L.REV. 737, 766 (1997)

could not be used as a set-off because the payments came from fund to which beneficiaries had contributed and, thus, were indistinguishable from benefits from a privately obtained policy).

■ This is because "[t]he purpose of cure is purely compensatory." *Lombas*, 58 F.3d at 27 (cite and quotes omitted); *Nichols v. Barwick*, 792 F.2d 1520, 1524 (11th Cir.1986) ("An injured seaman who has not paid his own expenses cannot recover for maintenance.... Maintenance is limited to seamen who actually incur expenses for their support. Thus, when maintenance is provided by parents or relatives or during hospitalization, no maintenance need be paid") (cite and quotes omitted); *see Toulson v. Ampro Fisheries, Inc.* 872 F.Supp. 271, 277 (E.D.Va.1995) ("The Court, instead, emphasizes the compensatory nature of cure. As previously noted, where a seaman has access to medical care free of charge, thus incurring no out-of-pocket expense, shipowners have not been required to pay the seaman additional compensation") (citing *Gosnell v. Sea–Land Serv. Inc.*, 782 F.2d 464, 468 (4th Cir.1986) (all expenses paid by union medical plan)).

■ At work here is the underlying rationale that liability for cure (and maintenance) is generally "not predicated on the fault or negligence of the shipowner; rather, it is an incident of the marine employer-employee relationship." *Rutherford v. Lake Michigan Contractors, Inc.*, 132 F.Supp.2d 592, 599–600 (W.D.Mich. 2000) ("Cure involves the payment of therapeutic, medical, and hospital expenses not otherwise furnished to the seaman") (cites

and quotes omitted); *Costa Crociere, S.p.A. v. Rose*, 939 F.Supp. 1538, 1548 (S.D.Fla.1996) ("The right to maintenance and cure springs from the seaman's dependence on his ship, and does not turn on fault of the shipowner or the seaworthiness of the vessel.... Moreover, the cause of the ailment is irrelevant, so long as it manifests itself while the seaman is in the service of his vessel") (cites omitted).

Relying on *Lombas*, Casey contends that Medicaid, not Blige, paid Blige's medical expenses. Doc. # 33 at 2. Under general maritime law, then, Casey's cure obligation was satisfied by Medicaid. *Id.*

■ But cases like *Lombas* rely heavily on the fact that the maintenance and cure obligation is "contract-like." *Lombas*, 58 F.3d at 26 ("the right of maintenance and cure ... lies on the borderline between contract and quasi-contract") (cites and quotes omitted). Courts in those cases reason that "tort cases furnish no guidance in this area," and thus conclude that the collateral source rule[7] doesn't apply. *Id.* at 27 (cite and quotes omitted); *Toulson*, 872 F.Supp. at 276 ("an action for maintenance and cure sounds in contract and must be considered separate and distinct from any related negligence cause of action").

■ Yet, here Blige brings a "tort-like" (*i.e.*, negligence based) maintenance and cure action under the Jones Act. *See Guevara*, 59 F.3d at 1511–12. In a Jones Act case, the plaintiff may recover for his medical expenses as damages (*i.e.*, "tort-like" maintenance and cure). Still, wheth-

---

7. Generally, the collateral source rule applies to tort actions. It "bars an employer-tortfeasor from mitigating damages by setting off compensation received by the employee from an independent source. In its simplest application, the rule prohibits the introduction of evidence offered to show that the employee already has been compensated for his inju-

ries." *Bourque v. Diamond M. Drilling Co.*, 623 F.2d 351, 354 (5th Cir.1980) (quotes, cite, and footnote omitted). A tortfeasor's liability, then, "generally may not be reduced by payments which the injured party received from insurance unless the insurance was procured by the tortfeasor." *Lombas*, 58 F.3d at 27 (cite omitted).

er couched as damages or cure, Blige can make only one claim for medical expenses. *See Boudreaux v. U.S.*, 2000 WL 300904 at *7 (E.D.La.2000) (unpublished) ("Because the plaintiff has chosen to present the issue of medical bills at trial as part of his damages, he is not entitled to duplicate this award with an additional claim for cure").

■ In contrast to maintenance and cure claims raised under general admiralty law, the collateral source rule applies to Jones Act cases. *Phillips v. Western Co. of North America*, 953 F.2d 923, 930 (5th Cir.1992) (the collateral source rule "is plainly applicable in Jones Act negligence cases"); *Bourque*, 623 F.2d at 354 n. 2 (under collateral source rule, jury should not have been allowed to consider fact that plaintiff was receiving workmen's compensation payments from subsequent employer's insurer) (*citing Tipton v. Socony Mobil Oil Co.*, 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963)).

■ So, in Jones Act cases, "compensation from a collateral source should be disregarded in assessing tort damages[.]" *Chisholm v. UHP Projects, Inc.*, 205 F.3d 731, 741 (4th Cir.2000); *see also Stanley v. Bertram–Trojan, Inc.*, 868 F.Supp. 541, 543 (S.D.N.Y.1994) (collateral source rule applies as a matter of federal law to admiralty cases). And, "[t]he substantive rule of no reduction carries with it an evidentiary rule requiring the exclusion of evidence of any collateral benefits." *Phillips v. Western Co. of North America*, 953 F.2d 923, 929 (5th Cir.1992). Under this rea-

soning, Medicaid payments are arguably a collateral source of funds such that evidence of such payments should not be presented at trial or set off against the shipowner's cure liability. *See generally Toulson*, 872 F.Supp. at 276.

Yet, Blige does not make that argument here. Absent argument for application of the collateral source rule,[8] the Court elects to follow the holdings of *Lombas* and *Toulson*.[9] Thus, Casey is not liable to Blige for his Medicaid paid medical expenses.

To this end, Casey submits that *all* of Blige's medical expenses have been paid by Medicaid. Doc. # 36 exhs. A & B; # 34 (attached: Younggreen dep. at 4–6; Counts dep. at 6). It is undisputed that Blige's medical expenses at the offices of doctors Pettigrew, Rashleigh and Zoller, doc. # 36 exh. A & B, and for services rendered at Memorial Medical Center have been paid. Doc. # 34 (Count dep. at 6).

Blige, however, disputes that all of his St. Joseph's Hospital bills have been paid. Doc. # 37 at 2. Younggreen deposed that one account—in the amount of $93.00—had not been paid. Doc. # 37 exh. A (Younggreen dep. at 7). Narrowing the issues for trial, *see* F.R.Civ.P. 56(d), the Court concludes that Casey's cure obligation has been satisfied with respect to all but Blige's $93 in St. Joseph's hospital medical expenses.

■ Generally, a shipowner is entitled to a setoff against the amount awarded by

---

8. This is not to say that such an argument would survive if challenged by other arguments against application of the collateral source rule in this context. *See Toulson*, 872 F.Supp. at 276 ("inapplicability of the collateral source rule is particularly appropriate where the seaman has not himself incurred actual expenses").

9. In a similar vein, some states have enacted statutes specifying that publically funded

medical care is not a collateral source, thus disallowing a plaintiff's double recovery. *See Peterson v. Willie*, 81 F.3d 1033, 1039 (11th Cir.1996) (interpreting F.S.A. § 768.76, exempting Medicare payments from consideration as collateral sources, such that evidence of medical care available to Florida's indigents was admissible).

the jury that is substantially equivalent to maintenance and cure. *See Phillips v. Western Co. of North America,* 953 F.2d 923, 929 (5th Cir.1992) ("maintenance pay may not be deducted from an award for past lost wages"). Any damages awarded for medical expenses are substantially equivalent to cure. Because, as determined above, Casey's cure obligation may be satisfied by Medicaid, the amount paid by it may therefore be setoff against the damage award.

■ The Court will thus setoff expenses paid by Medicaid post-verdict. In this regard, the *Phillips* court reasoned that "it is quite unnecessary in cases where the defendant is entitled to a setoff to introduce evidence of benefits that already have been paid." *Id.* at 934. Rather, the court should deduct maintenance or cure paid after the verdict. *Id.* at 934 ("evidence of past payments should be excluded and setoff after the verdict"). Otherwise, the "concern [is] that juries will factor in evidence of collateral payments when determining liability." *Reed v. E.I. Du Pont de Nemours and Co.,* 109 F.Supp.2d 459, 465–66 (S.D.W.Va.2000) (collecting cases); *Phillips,* 953 F.2d at 934 ("there is no reason to risk jury prejudice when it is unnecessary for the jury to perform the setoff calculation").

### C. O.C.G.A. § 49–4–149(a)

Blige contends that even if Medicaid has covered all of his medical expenses, he is still entitled to cure in light of O.C.G.A. § 49–4–149(a), since under it Medicaid could try to impress a lien on any recovery he might realize at trial. Doc. # 37 at 3–4. In effect, Blige wants to recover Medicaid's "share" of his cure claim so that

Medicaid's lien can be satisfied. Section 49–4–149(a) provides:

> The Department of Community Health shall have a lien for the charges for medical care and treatment provided a medical assistance recipient upon any moneys or other property accruing to the recipient to whom such care was furnished or to his legal representatives as a result of sickness, injury, disease, disability, or death, due to the liability of a third party, which necessitated the medical care.

Casey submits that this statute is inapplicable to a Jones Act/general maritime law case. Doc. # 39 at 6. The Court need not reach that issue until a more fundamental question is resolved—whether Medicaid has complied with the statute's lien filing requirement. *See* O.C.G.A. § 49–4–149(b) ("the department shall have one year from the date the last item of medical care was furnished to file its verified lien statement; and the statement shall be filed with the appropriate clerk of the court in the county wherein the recipient resides and in Fulton County").

Casey points out that Blige has not shown whether Medicaid has done so,[10] and further suggests that it has not. Doc. # 39 at 8–9; *cf. Dep't of Medical Assistance v. Hallman,* 203 Ga.App. 615, 615, 417 S.E.2d 218 (1992) (Department waived lien rights by failing to take action to recover on lien against tortfeasor within one year). Since this issue will be mooted if Casey is found not liable, the Court will—in the interests of judicial economy—address it post-verdict.

### D. Motion to Strike

Casey moves, unopposed, under F.R.Civ.P. 12(f) to strike ¶ 12 of Blige's

---

10. Blige provides a letter from Medicaid's recovery unit, doc. # 37 exh. B, that cites the medicaid lien statute and requests that "[i]f any settlement is to be made, the amounts expended by the Department should be considered," but it does not show compliance with the verified lien requirement.

Complaint. Doc. # 27. Under Rule 12(f), a court may, upon motion by a party or on its own initiative, "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Although untimely, the Court has discretion to consider Casey's motion. *See Lunsford v. U.S.,* 570 F.2d 221, 227 n. 11 (8th Cir.1977) ("We note that even though the plaintiffs' motion to strike was not made within the time limits established by [Rule] 12(f), the District Court did have authority to consider the plaintiffs' motion as it may strike material from the pleadings on its own initiative"); *FDIC v. Pelletreau & Pelletreau,* 965 F.Supp. 381, 390 (E.D.N.Y.1997) ("Rule 12(f) authorizes the district court to act 'upon the court's initiative at any time.' This grant of judicial discretion has been interpreted to allow the court to consider untimely motions to strike and to grant them if doing so seems proper.... In light of this, the time limitations in Rule 12(f) should not be applied strictly when the motion seems to have merit") (cite and quotes omitted); 5A Wright & Miller, FED. PRAC. & PROC. § 1380 (1990).

In ¶ 12, Blige alleged: "At the same time and on that same date [9/6/97], Hinton Arnsdorff [acting Captain of the vessel] was consuming and/or had consumed alcoholic beverages." Doc. # 1. Blige admitted in his deposition, Casey contends, that this allegation is unfounded. Doc. # 27. Blige deposed:

Q. But I mean when he was on the boat during the entire day and once you got hurt, he was sober?

A. He was sober.

\* \* \* \* \* \*

Q. . . . You didn't see him taking any drink of alcohol on that day?

A. No, he didn't take no alcohol. The alcohol—we had a couple of beers in the cooler.

\* \* \* \* \* \*

A. . . . We had beers in the cooler, but we didn't have time for the cooler or nothing . . . .

Q: . . . any allegation that said that Hinston Arnsdorff was drinking alcohol on the boat that day is not correct, is it?

A. No . . . .

Doc. # 27 exh. A.

So, it is undisputed that Arnsdorff was not drinking on 9/6/97. Blige's allegation in ¶ 12 of his Complaint is thus without factual support. The Court, therefore, strikes ¶ 12 to clean up the issues for trial. *See U.S. v. Dico, Inc.,* 189 F.R.D. 536, 541 (S.D.Iowa 1999) ("a motion to strike should be granted if it may have the effect of making the trial of the action less complicated, or [it] may have the effect of otherwise streamlining the ultimate resolution of the action") (cites and quotes omitted; alteration original).

As the parties have filed their Consolidated Pre-trial Order and Proposed Jury Instructions, this case is ready for trial. To summarize, Blige may seek attorneys' fees, but not punitive damages, on his maintenance and cure claim. The Arnsdorff drinking allegation (Complaint ¶ 12) is stricken. And, the Court will address the Medicaid setoff and lien issues postverdict. Finally, because this is a consolidated Jones Act/Limitation of Liability (46 U.S.C.App. §§ 183–189) case, the Court will determine Casey's privity and knowledge once liability and damages are determined at trial. *See* 1/18/01 Order, doc. # 8 at 3.

## IV. *CONCLUSION*

Accordingly, the Court *GRANTS* defendant Michael Casey's Motion for Partial

**1360**

Summary Judgment, doc. ## 32, 36, and leave to file same. Doc. # 36. The Court also *GRANTS* defendant Michael Casey's Motion to Strike Pleadings and for leave to file same. Doc. # 27.