[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 23, 2007
THOMAS K. KAHN
CLERK

No. 06-13204

D. C. Docket No. 05-00649-CV-J-HES-HTS

ATLANTIC SOUNDING CO., INC.,
WEEKS MARINE, INC.,

Plaintiffs-Counter-
Defendants-Appellants,

versus

EDGAR L. TOWNSEND,

Defendant-Counter-
Claimant-Appellee,

THOMAS KIMBROUGH,

Defendant.

Appeal from the United States District Court
for the Middle District of Florida

**(August 23 ,2007)**

Before EDMONDSON, Chief Judge, CARNES and FAY, Circuit Judges.

EDMONDSON, Chief Judge:

In this interlocutory appeal, Plaintiffs-Appellants Atlantic Sounding Co., Inc., and Weeks Marine, Inc. ("Plaintiffs") appeal the district court's denial of Plaintiffs' motion to strike Defendant-Appellee Edgar L. Townsend's ("Defendant") request for punitive damages. The district court concluded that it was bound by our prior panel decision in Hines v. J.A. LaPorte, Inc., 820 F.2d 1187 (11th Cir. 1987), which permits a seaman to recover punitive damages when an employer arbitrarily and willfully refuses to pay maintenance and cure. Plaintiffs contend that Hines was abrogated by Miles v. Apex Marine Corp., 111 S. Ct. 317 (1990), in which the Supreme Court concluded that recovery for non-pecuniary loss in the wrongful death of a seaman was not available under general maritime law. We conclude that our prior decision in Hines remains binding law in this Circuit; therefore, we affirm.

On 5 July 2005, Defendant, a seaman and crew member of the Motor Tug Thomas, allegedly slipped and landed shoulder first on the steel deck of the vessel, injuring his shoulder and clavicle. According to Defendant, Plaintiffs advised him that they would not provide him with maintenance and cure, which covers medical care, a living allowance, and wages for seamen who become ill or are injured

2

while serving aboard a vessel.[1]  Plaintiffs then filed this suit for declaratory relief on the question of their obligations in this matter.

Two days later, Defendant filed suit against Plaintiffs pursuant to the Jones Act, 46 U.S.C. § 688, and general maritime law, alleging negligence, unseaworthiness, arbitrary and willful failure to pay maintenance and cure, and wrongful termination.  He then filed the same claims as counterclaims to the declaratory judgment action and sought punitive damages on his maintenance and cure claim.

The district court later consolidated the two actions.

Plaintiffs moved to strike or to dismiss Defendant's request for punitive damages.  Plaintiffs contended that, under Miles, neither the Jones Act nor general maritime law provides a cause of action against an employer for non-pecuniary damages.  The district court denied Plaintiffs' motion, concluding that it was bound by our rule in Hines.  The district court later denied Plaintiffs' motion for

---

[1]In Flores v. Carnival Cruise Lines, 47 F.3d 1120, 1127 (11th Cir. 1995), we described this kind of cause of action:

> The seaman's action for maintenance and cure may be seen as one designed to put the sailor in the same position he would have been had he continued to work: the seaman receives a maintenance remedy, because working seamen normally are housed and fed aboard ship; he recovers payment for medical expenses in the amount necessary to bring him to the maximum cure; and he receives an amount representing his unearned wages for the duration of his voyage or contract period.

reconsideration of the issue, but certified the question for review on interlocutory appeal.

Whether punitive damages may be recovered in maintenance and cure actions is a question of law that we review de novo. See Tucker v. Fearn, 333 F.3d 1216, 1218 n.2 (11th Cir. 2003). The central question here is whether we may depart from our prior ruling in Hines, based on the Supreme Court's intervening decision in Miles; we conclude that we may not.

Under our prior panel precedent rule, a later panel may depart from an earlier panel's decision only when the intervening Supreme Court decision is "clearly on point." Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees, 344 F.3d 1288, 1290-92 (11th Cir. 2003) (concluding that an intervening Supreme Court decision did not "implicitly overrule" a prior circuit decision because the cases dealt with different issues and were not "clearly inconsistent"). The Supreme Court reminds us that "[t]here is, of course, an important difference between the holding in a case and the reasoning that supports that holding." Crawford-El v. Britton, 118 S. Ct. 1584, 1590 (1998). So, that the reasoning of an intervening high court decision is at odds with that of our prior decision is no basis for a panel to depart from our prior decision. As we have stated, "[o]bedience to a Supreme Court decision is one thing, extrapolating from its implications a holding

4

on an issue that was not before that Court in order to upend settled circuit law is another thing." Main Drug, Inc. v. Aetna U.S. Healthcare, Inc., 475 F.3d 1228, 1230 (11th Cir. 2007) (concluding that the Supreme Court's determination that the time requirement in Fed. R. Crim. P. 33 was not jurisdictional did not "relieve[] us from the obligation to follow our prior panel decisions holding that the requirements of Appellate Rule 5 are jurisdictional"); see also Smith v. GTE Corp., 236 F.3d 1292, 1303 (11th Cir. 2001)("[W]e categorically reject any exception to the prior panel precedent rule based upon a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at that time."); Fla. League of Prof'l Lobbyists, Inc. v. Meggs, 87 F.3d 457, 462 (11th Cir. 1996) ("[W]e are not at liberty to disregard binding case law that is so closely on point and has been only weakened, rather than directly overruled, by the Supreme Court.").

In Hines, a panel of this Court determined that, in an action for maintenance and cure, "both reasonable attorney's fees and punitive damages may be legally awarded in a proper case" – that is, upon a showing of a shipowner's willful and arbitrary refusal to pay maintenance and cure. Hines, 820 F.2d at 1189. In reaching this conclusion, we relied mainly on four cases: Vaughan v. Atkinson, 82 S. Ct. 997 (1962); Complaint of Merry Shipping, Inc., 650 F.2d 622 (5th Cir. Unit

5

B 1981): <u>Holmes v. J. Ray McDermott & Co.</u>, 734 F.2d 1110 (5th Cir. 1984); and

<u>Robinson v. Pocahontas, Inc.</u>, 477 F.2d 1048 (1st Cir. 1973). We started with the

proposition that <u>Vaughan</u> "permitted a seaman to recover reasonable counsel fees

when the shipowner's default in the duty to provide maintenance and cure was

willful and persistent." <u>Hines</u>, 820 F.2d at 1189.[2] We then noted that we had

previously concluded in <u>Merry Shipping</u> that "punitive damages [were]

recoverable under general maritime law upon a showing of a shipowner's willful

and wanton misconduct in a death action." <u>Id.</u> And we noted that the Fifth Circuit

had extended the <u>Merry Shipping</u> rule to maintenance and cure actions in <u>Holmes</u>

and that the First Circuit also allowed punitive damages in similar circumstances.

<u>Id.</u> While stating that <u>Vaughan</u> was not dispositive because it considered only

attorney's fees, we decided to follow the Fifth Circuit in adopting the reasoning of

<u>Merry Shipping</u> and extending <u>Vaughan</u>'s rule to punitive damages in

maintenance and cure actions. <u>Id.</u>

Three years later in <u>Miles</u>, the Supreme Court "conclude[d] that there is no

recovery for loss of society in a general maritime action for the wrongful death of

---

[2]We did, however, acknowledge that it was unclear whether the <u>Vaughan</u> majority regarded attorney's fees as an item of compensatory damages or as a punitive measure. <u>See Hines</u>, 820 F.2d 1189.

6

a Jones Act seaman." Miles, 111 S. Ct. at 326. In reaching this conclusion, the
Court made this observation:

> We no longer live in an era when seamen and their loved ones must look
> primarily to the courts as a source of substantive legal protection from
> injury and death; Congress and the States have legislated extensively in
> these areas. In this era, an admiralty court should look primarily to these
> legislative enactments for policy guidance. We may supplement these
> statutory remedies where doing so would achieve the uniform
> vindication of such policies consistent with our constitutional mandate,
> but we must also keep strictly within the limits imposed by Congress.

Id. at 323. Then, taking note that neither the Jones Act nor the Death on the High
Seas Act ("DOHSA"), 46 U.S.C. §§ 761, 762--both of which provide causes of
action for the wrongful death of a seaman--permits the recovery of non-pecuniary
losses, such as loss of society, the Court stated that "[i]t would be inconsistent
with our place in the constitutional scheme were we to sanction more expansive
remedies in a judicially created cause of action in which liability is without fault
than Congress has allowed in cases of death resulting from negligence." Id. at
326. Therefore, the Court denied the recovery sought and "restore[d] a uniform
rule applicable to all actions for the wrongful death of a seaman, whether under
DOHSA, the Jones Act, or general maritime law." Id.

Plaintiffs argue that "[t]he Miles uniformity principle dictates that all
subsequent courts determining the availability of damages in a maritime case must

7

provide for uniform results in similar factual settings, regardless of whether the action is brought pursuant to the Jones Act, DOSHA, or general maritime law." Under this principle, Plaintiffs reason, Defendant cannot recover punitive damages for a general maritime maintenance and cure cause of action because he would not be able to recover punitive damages--which are non-pecuniary in nature--under the Jones Act. But this argument can only be based on the reasoning of the <u>Miles</u> opinion, not on the <u>Miles</u> decision: its holding. <u>Miles</u> says and--more important-- decides nothing about maintenance and cure actions or punitive damages. <u>See</u> <u>Cohens v. Virginia</u>, 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257 (1821) (Marshall, C.J.) ("[G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used.") For this reason, the <u>Miles</u> decision provides no basis for this panel to depart from <u>Hines</u> under our prior panel precedent rule. <u>See</u> <u>Guevara v. Maritime Overseas Corp.</u>, 34 F.3d 1279, 1283 (5th Cir. 1994), <u>rev'd in part on reh'g</u>, 59 F.3d 1496 (1995) ("Maritime's argument that Miles abrogates this Circuit's rule [announced in Holmes] permitting the recovery of punitive damages in maintenance and cure cases obviously cannot rest upon the specific holding in Miles . . . . Miles did not involve maintenance and cure or punitive damages."); Glynn v. Roy Al Boat Mgmt. Corp., 57 F.3d 1495, 1503 (9th Cir. 1995) ("Because Miles did not consider the availability of punitive damages,

8

and was not faced with a claim for maintenance and cure that has no statutory analog, it does not directly control the question of whether punitive damages are available for the willful failure to pay maintenance.").[3]  Therefore, the district court did not err in following Hines--the law of this Circuit--and in denying Plaintiffs' motion to strike Defendant's request for punitive damages.

**AFFIRMED.**

---

[3]Even those courts that have extended <u>Miles</u> to factual situations that are more similar to that presented in <u>Miles</u> have recognized that they do so under the reasoning, rather than the holding, of the Supreme Court's opinion.  <u>See</u>, <u>e.g.</u>, <u>Horsley v. Mobil Oil Corp.</u>, 15 F.3d 200, 202-03 (1st Cir. 1994) (relying on the "rationale" and "analysis" of <u>Miles</u> to conclude that seaman who had suffered nonfatal injuries could not recover punitive damages in an unseaworthiness action under general maritime law); <u>Miller v. Am. President Lines, Ltd.</u>, 989 F.2d 1450, 1455, 1459 (6th Cir. 1993) (concluding that punitive damages are not available in general maritime law unseaworthiness action for wrongful death of a seaman, after stating that <u>Miles's</u> "reasoning, if not its holding, seems to cover the type of damages before us").

CARNES, Circuit Judge, concurring:

I join Chief Judge Edmondson's opinion in its entirety. For the reasons it explains and on the basis of the decisions it cites, we are obligated to follow our prior precedent in Hines v. J.A. LaPorte, Inc., 820 F.2d 1187 (11th Cir. 1987). We must follow Hines' specific holding that punitive damages are available where there is a willful and persistent failure to pay maintenance and cure, 820 F.2d at 1189–90, even though this Court might have decided that issue differently if Miles v. Apex Marine Corp., 498 U.S. 19, 111 S. Ct. 317 (1990), had been available at the time it first arose.

The prior panel precedent rule is a fundamental ground rule that embodies the principle of adherence to precedent. It promotes predictability of decisions and stability of the law, it helps keep the precedential peace among the judges of this Court, and it allows us to move on once an issue has been decided. Without the rule every sitting of this court would be a series of do-overs, the judicial equivalent of the movie "Groundhog Day." While endlessly recurring fresh starts is an entertaining premise for a romantic comedy, it would not be a good way to run a multi-member court that sits in panels. As a panel, we must follow our holding in Hines instead of any inferences we may draw from the Supreme Court's

reasoning in deciding a different issue in <u>Miles</u> because the prior precedent rule requires that we do so, and we take that rule seriously.

At the same time, of course, we are obligated to take Supreme Court decisions seriously, very seriously.  Our obligation to do so flows from the constitutional plan of "one supreme Court, and . . . such inferior Courts as the Congress may from time to time ordain."  U.S. Const. Art. III, § 1; <u>see</u> <u>Schwab v. Crosby</u>, 451 F.3d 1308, 1325 (11th Cir. 2006) ("We have always believed that when the Founders penned Article III's reference to the judicial power being vested 'in one supreme Court and in such inferior Courts' as Congress may establish, they used 'supreme' and 'inferior' as contrasting adjectives, with us being on the short end of the contrast." (citation omitted)), <u>cert. denied</u>, 127 S. Ct. 1126 (2007).

The duty of a later panel of this Court to follow an earlier one's decision ends when that decision conflicts with the holding of a later Supreme Court decision.  If <u>Miles</u> had held that punitive damages were not available for the willful failure to pay maintenance and cure, we certainly would follow that holding instead of our contrary one in <u>Hines</u>, even if the <u>Miles</u> opinion did not mention the <u>Hines</u> decision.  <u>See</u> <u>In re Provenzano</u>, 215 F.3d 1233, 1235 (11th Cir. 2000); <u>Davis  v. Singletary</u>, 119 F.3d 1471, 1482 (11th Cir. 1997);  <u>United States</u>

11

v. Hogan, 986 F.2d 1364, 1369 (11th Cir. 1993).  But Miles held nothing about maintenance and cure or punitive damages.  It addressed the different issue of whether damages for loss of society are recoverable in a general maritime cause of action for the wrongful death of a seaman, deciding that they were not.  498 U.S. at 37, 111 S. Ct. at 328.

The contention of the appellants in this case is not that the Miles holding is contrary to the Hines holding, but that the reasoning the Supreme Court used to reach its holding in Miles, 498 U.S. at 30–33, 111 S. Ct. at 324–26, is inconsistent with the holding in Hines,  820 F.2d at 1189–90.  The argument does not pit holding against holding, but reasoning against holding.  The broader question this argument presents is whether, and if so when, a panel of this Court may vary from a specific holding of an earlier one based on the reasoning the Supreme Court used to reach a later decision on a different issue.

That question is not particularly difficult in this case because even if there is some tension between the two, it is far from clear that Miles' reasoning conflicts with Hines' holding.  At least a half dozen courts have held that Miles does not compel the conclusion that punitive damages are unavailable in maintenance and cure cases.  See Glynn v. Roy Al Boat Mgmt. Corp., 57 F.3d 1495, 1503 (9th Cir. 1995) (concluding that Miles "does not directly control the question of whether

12

punitive damages are available for the willful failure to pay maintenance" but deciding that punitive damages are unavailable for another reason); Smith v. MAR, Inc., 877 F. Supp. 62, 67 (D.R.I. 1995) (noting that "Miles has not stated that punitive damages are unavailable in a claim for maintenance and cure," and concluding that "plaintiff's claim for punitive damages for the agent's arbitrary and willful conduct in failing to pay maintenance and cure is a viable claim post Miles"); White v. Am. River Transp. Co., 853 F. Supp. 300, 301 (S.D. Ill. 1993) ("As a purely judicial remedy, maintenance and cure has no statutory counterpart. Consequently, it does not defeat Miles' goal of uniformity to permit nonpecuniary damages in conjunction with a claim for maintenance and cure."); Ortega v. Oceantrawl, Inc., 822 F. Supp. 621, 624 (D. Alaska 1992) ("Miles does not extend to preclude a claim for exemplary damages in regard to a claim for maintenance and cure."); Ridenour v. Holland Am. Line Westours, Inc., 806 F. Supp. 910, 911, 913 (W.D. Wash. 1992) (concluding that "Miles is not dispositive as to the availability of punitive damages for willful withholding of maintenance and cure" and holding that "punitive damages are available in an action for maintenance and cure"); Anderson v. Texaco, Inc., 797 F. Supp. 531, 536 (E.D. La. 1992) (concluding that the availability "punitive damages for willful failure to pay maintenance and cure, a firmly rooted general maritime law claim, is unaffected by

<u>Miles</u> because failure to pay is a contractual claim not reached by any maritime statute").

Other courts have decided differently. See <u>Guevara v. Mar. Overseas Corp.</u>, 59 F.3d 1496, 1512 (5th Cir. 1995) (en banc) (relying on <u>Miles</u> to overrule a prior panel decision and hold that "punitive damages [are] not . . . available in any action for maintenance and cure" (emphasis omitted)); <u>In re J.A.R. Barge Lines, L.P.</u>, 307 F. Supp. 2d 668, 673 (W.D. Pa. 2004) ("Under the <u>Miles</u> uniformity principle, then, punitive damages are unavailable in maintenance and cure actions under general maritime law."); <u>Blige v. M/V GEECHEE GIRL</u>, 180 F. Supp. 2d 1349, 1355 (S.D. Ga. 2001) (same); <u>Watters v. Harrah's Ill. Corp.</u>, 993 F. Supp. 667, 676–77 (N.D. Ill. 1998) (citing cases coming down on different sides of the issue, but deciding that "[p]ursuant to the <u>Miles</u> uniformity principle, punitive damages are not recoverable in the tort-like maintenance and cure action" and that "punitive damages should not be recoverable in a contract-like maintenance and cure action if they are not recoverable in a tort-like maintenance and cure action"); <u>Boyd v. Cinmar of Gloucester, Inc.</u>, 919 F. Supp. 208, 209–10 (E.D. Va. 1996) ("extending" the Supreme Court's ruling in <u>Miles</u> to bar recovery of punitive damages in maintenance and cure actions).

14

The bottom line is that courts are divided over whether the reasoning of

Miles conflicts with a holding that punitive damages are available in maintenance

and cure actions.  At least where reasonable jurists may disagree about whether a

later Supreme Court decision compels a different answer to an issue decided by an

earlier panel, later panels should follow the existing circuit precedent.  That is the

case here.

Of course, even if an intervening Supreme Court decision does not conflict

with a prior panel precedent to the extent of overruling it, en banc rehearing may

be granted for the purpose of addressing the issue afresh in light of the reasoning

or implications of the Supreme Court decision.  Whether to do that, however, is a

different question.